OSTRANDER, J. I think the estate should be held liable as upon an implied assumpsit.

---

ESTATE OF BECKWITH *v.* SPOONER.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION—PETITION TO TERMINATE PAYMENTS—RES JUDICATA.

On the hearing of an employer's petition to the Industrial Accident Board to terminate compensation awarded to an injured servant by the contract of employer approved by the accident board, the essential elements leading up to the award are to be taken as concluded and are not open to review. The physical condition of the injured employee

is the subject of inquiry and is legally open to adjudication. Act No. 10, Extra Session 1912 (2 How. Stat. [2d Ed.] § 3939 *et seq.*).

2. SAME—CONTRACTS—RES JUDICATA.

An employer's agreement filed with and approved by the accident board, granting compensation to a servant for injuries sustained in the course of his employment, is a substitute for, and under the statute is the legal equivalent of, a final award of the board, and has equal force and standing, when, to enforce recovery, it becomes necessary to put them in judgment in the circuit court.

3. APPEAL AND ERROR—CERTIORARI—WORKMEN'S COMPENSATION.

Upon review of the findings and determination of the Industrial Accident Board by writ of certiorari, the findings of fact are to be taken as final and conclusive if there is evidence to support them, in the absence of fraud.

4. SAME—INDUSTRIAL ACCIDENT BOARD—REVIEW.

Where an employee received compensation from his employer by a written agreement approved by the accident board, after a full opportunity to investigate the facts, and no fraud was alleged, the agreement was conclusive as to a subsequent claim of the employer that the loss of the eye, afterward, by a cataract, was not produced by the injury, which the medical testimony tended to show might have resulted from the injury, the employer claiming that the cataract resulted from a cataract on the other eye that had been removed by an operation, or was caused by senility, and that the injury did not cause the loss of sight.

5. SAME.

Where different inferences may be drawn from the testimony before the Industrial Accident Board, and inferences which are favorable to their finding that a petition to terminate compensation should not be granted are deducible from the record, the court on certiorari will not disturb the result.

Certiorari to the Industrial Accident Board; submitted November 13, 1913. (Docket No. 114.) Decided December 18, 1914.

The estate of P. D. Beckwith, a corporation, and Fidelity & Casualty Company of New York petitioned

the Industrial Accident Board for an order terminating the right to compensation of Alden Spooner, under an agreement with the petitioner, and from an order denying the petition they appeal.   Affirmed.

*Charles H. Ruttle,* for appellants.
*Person, Shields & Silsbee,* for appellee.

STEERE, J.   Plaintiffs and appellants herein seek, by certiorari, review and reversal of certain "Proceedings and Decisions and Awards," had and made before and by the Industrial Accident Board of this State, which culminated in the following final order:

"ALDEN SPOONER, Claimant, *v.*
   "ESTATE OF P. D. BECKWITH & FIDELITY & CAS-
      UALTY COMPANY OF NEW YORK, Respondents.
   "This matter having come on to be heard upon the petition of the respondent filed herein, praying for relief and to stop compensation for reasons set forth in said petition, and, after full examination of the proofs, upon said petition, and hearing argument thereon, and due consideration thereon having been had, and it appearing to the board that the facts alleged in said petition as reason for stopping compensation are not sustained by the proofs, it is ordered and adjudged that the said petition be, and the same is hereby, dismissed."

It appears undisputed that said Alden Spooner was regularly employed as a molder by the above corporation, known as the "Estate of P. D. Beckwith," of Dowagiac, Mich., which, as an employer of labor, had, with approval of the Industrial Accident Board, elected to come under the provisions of Act No. 10, Public Acts of 1912, Extra Session (2 How. Stat. [2d Ed.] § 3939 *et seq.*).   While regularly engaged in its employment as a molder Spooner suffered an accident resulting in an injury to his right eye, described by his employer, in its report made under the requirements of section 16, part 3, of said act, as follows:

"Molten iron splashed into right eye, right eye burned."

Section 5 of part 3 of said act provides:

"If the employer, or the insurance company carrying such risk, or commissioner of insurance, as the case may be, and the injured employee reach an agreement in regard to compensation under this act, a memorandum of such agreement shall be filed with the Industrial Accident Board, and, if approved by it, shall be deemed final and binding upon the parties thereto. Such agreements shall be approved by said board only when the terms conform to the provisions of this act."

Pursuant to the provisions of this section the following was filed with the Industrial Accident Board, on November 14, 1913:

"AGREEMENT IN REGARD TO COMPENSATION.

"We, Al Spooner, residing at city or town of Dowagiac, Mich., and Fidelity & Casualty Co., of N. Y., have reached an agreement in regard to compensation for the injury sustained by said employee while in the employ of Estate of P. D. Beckwith, Inc., Dowagiac.

"The time, including hour and date of accident, the place where it occurred, the nature and cause of injury and other cause or ground of claim, are as follows:

"Mr. Spooner was injured Oct. 22, 1913, about 4:30 p. m. Molten iron splashed into right eye, causing bad burn in corner of eye.

"The terms of the agreement follow: $17.60 wages earned; $8.80 compensation agreed upon.

"AL SPOONER.

"FIDELITY & CASUALTY CO., OF N. Y.,

"By LEO A. DONAHOE.

"Witness: WM. HURST.

"E. A. MIECHAM.

"Dated at Dowagiac, Mich., this 12th day of November, 1913."

This agreement was approved by the Industrial Accident Board on November 14, 1913, and thereafter compensation was paid accordingly from October 22, 1913, to January 14, 1914. On January 21, 1914, ap-

pellants filed with the Industrial Accident Board a petition asking to be relieved from further payments, based upon the following letter or report, addressed to Dr. Jones, the local physician who attended Spooner professionally at the time of his injury, and who had referred him to Dr. Bonine, an eye specialist:

"January 15, 1914.
"DR. J. H. JONES,
  "Dowagiac, Mich.
"*Dear Sir:*
  "I have had Mr. Spooner under my careful scrutiny and find the following condition:  Some years ago I operated for cataract on one eye and obtained good results—above the average.  The other eye shows signs of the same trouble at this time.  That, however, is not strange as it is the rule with senile cataracts if they come on one eye they are quite certain to grow on the other, as you know.
  "Therefore there is nothing unexpected about the remaining lens filling in, so can't see where any one could be held responsible for present conditions, as no other pathological condition of the orbit is in evidence.
                    [Signed]  "F. N. BONINE, M. D."

Upon the hearing of  said  petition  depositions of Drs. Jones and Bonine were introduced in evidence. The board thereafter made the following:

"FINDINGS OF FACT.
  "(1) The  respondent, Alden  Spooner,  was  employed in the plant of the Estate of P. D. Beckwith, Inc., as a molder, and had worked there for several years in that capacity.  He was 65 years old, and at the time of the injury was receiving wages of $17.60 per week.
  "(2) That on October 22, 1913, respondent while attending to his duties as a molder, received an injury to his right eye by having hot sand and other substances splashed into the same, producing an inflammation necessitating immediate medical attention and causing disability to do work.
  "(3) That in 1905 respondent had a cataract removed from his left eye by Dr. F. N. Bonine, and that

such operation was successful and the result thereof above the average.

"(4) That respondent's right eye, being the one injured in October, 1913, has now developed a cataract, which is so far advanced that he can discern light, but has practically no vision. His left eye, operated on in 1905, is of little use, and he is in a condition of total disability on account of the condition of his said eyes.

"(5) That the claim of petitioners that the present condition of respondent's right eye is due not to the injury thereof on October 22, 1913, but that such condition is due to senile cataract, is not sustained by the evidence.

"(6) That the present condition of respondent's right eye and his resulting disability is due to the injury received by him October 22, 1913.

"(7) That all of the proposed findings of fact of petitioners, not included in these findings, are refused."

Against the action of the Industrial Accident Board in this matter, appellants urge two major grounds of reversal: *First,* that the controlling findings of fact are unwarranted and unsupported by evidence; and, *second,* "insufficiency of proceedings." In explanation of the latter it is stated that not the legality, but the sufficiency, of the proceedings is questioned, in the particular that, although appellants in support of their petition produced proof which established—

"Spooner was suffering with a senile cataract, and that his disability was not a result of his injury of October 22, 1913, yet the Industrial Accident Board refused to accept the unchallenged testimony of the physicians, and without any further evidence whatsoever, as to Spooner's precise condition, with respect to his eyes, entered an order denying appellants' petition, which order is so vague, uncertain and indefinite that it may work irreparable damage to appellants, * * *" and "that appellee has never produced any proof that he sustained an injury while in the employ of the Estate of P. D. Beckwith, Inc.; that there is no evidence that his disability or impairment of eye-

sight were a result of his accident of October 22, 1913, as well as that it did not exist for some time prior to the date mentioned; that at no time has any admissible evidence been offered relative to his present condition, whether the sight of the left eye operated on in 1905 is good, or in any degree impaired, and if impaired to what extent, nor is there any testimony as to the exact condition of the right eye, in which grains of sand lodged on October 22, 1913, and whether the sight in that eye is impaired, permanently or partially, or to what degree."

In the latter particular appellants disregard the significance of the report and agreement as to compensation filed by them, which eliminate the various statutory steps of arbitration now urged as imperative. The agreement, filed with and approved by the board, is a substitute for, and, under the statute, the legal equivalent of, an arbitral award. They have equal force and like standing when, to enforce recovery it becomes necessary to put them in judgment in the circuit court for the county where the accident occurred (section 13, part 3, of said act). The power of the board to act upon a petition such as appellants presented in this case is found in the following section (14), which authorizes it to review any weekly payment at the request of the employer, insurance company carrying the risk, commissioner of insurance, or employee, "and on such review it may be ended, diminished or increased, subject to the maximum and minimum amounts above provided, if the board finds that the facts warrant such action."

On the hearing of such petition for review it can be stated as a general rule that the essentials leading up to the award, or its equivalent, are to be taken as *res adjudicata,* except the physical condition of the injured employee, which naturally and legally remains open to inquiry. *Mead* v. *Lockhart,* 2 B. W. C. C. 398.

We discover no claim in this record that appellants were induced to enter into the agreement regarding

compensation by fraudulent misrepresentations of the other party. It is established beyond question by their own representations that Spooner was injured on October 22, 1913, while working as a molder for the Estate of Beckwith, by "molten iron splashed into right eye; right eye burned;" that he was treated by Dr. Jones, one of their witnesses, on October 23d, 27th, 30th, and 31st. Dr. Jones, a physician in general practice, testified that he found small, black particles of foreign substance in the right eye and inflammation in the conjunctiva, but neither it nor the cornea were abrased or penetrated; that the inflammation was slow in disappearing, and continued over several weeks—four or five weeks before it disappeared—that he thought it a case which needed the service of a specialist, and referred the patient to Dr. Bonine. The only reference in Dr. Jones' testimony to a cataract is found in this answer to a question, on cross-examination, whether he thought the injury he treated would cause, or help cause, a cataract.

"*A.* Well, upon technical points, the substance of special matters bearing upon the interior conditions of the eye, I don't make a special work of it. I would state, however, severe injuries to the eye do cause cataracts. I do not make a practice of treating conditions that involve the interior of the eye, but I refer them to a specialist."

We see no force in the contention that at the time of settlement Spooner was not suffering from an injury which arose out of and in the course of his employment. The manner of the accident and condition of the eye were then open to appellants' investigation, and unquestioned. After ample time and opportunity to learn fully of the accident and history of the case from the physician in charge, the injured employee, and all other sources, the agreement was made on November 12th following. We find no testimony tending in any manner to show that prior to the accident there

was any cataract or impairment of vision in, or trouble with, this right eye. Thereafter its vision was impaired, and a state of inflammation, slow in healing, led the local physician to refer the patient to a specialist, who, on December 20, 1913, discovered an immature, developing cataract, the existence of which was undisputed at the time of hearing.

Dr. Bonine testified that when he examined the injured eye, on December 20, 1913, "there was irritation of the eye that could be attributed to an inflammatory state of traumatism producing it, or hardness of the eyeball would cause a largeness of the vessels of the eye, would give it that appearance;" that he found a pretty well-advanced cataract on that eye, but could not tell how long it had been forming, because he had not seen Spooner, except casually, since he operated on his left eye for a cataract eight years previous, in 1905. In explaining the nature of cataracts, witness stated that there were three distinct ways in which they are formed, the simplest being a traumatic cataract, caused from an injury, the second a senile cataract, caused by an interference with the nourishment of the lens through diseases of the inner tissues, and the third hereditary, or resulting from hereditary tendency; that a traumatic cataract would usually come in from one to three or four weeks after an injury, or sometimes instantly if the lens was pierced so that the aqueous humor came in contact with it; asked if this was a traumatic or senile cataract, he answered:

"A senile. * * * It is the rule when a cataract comes on one eye the tendency is to form on the other; not necessarily, but it is the rule, and not concurrent. * * *

"Q. Could you determine, in saying, whether this was a senile or traumatic cataract?

"A. The stage of inflammation had gone on until it would be a difficult matter to do that. The only indi-

cation had was irritaticn or flushed eyeball that I spoke of at first; that was traumatism.

"*Q.* Has the cataract grown since you first saw Mr. Spooner in December?

"*A.* From the first to the last the vision has decreased decidedly. * * *

"*Q.* If this was a traumatic cataract, would it have been probably fully developed by December 20th, in 8 weeks?

"*A.* Depending upon the severity of the injury. If the injury was slight, it would develop slowly."

Being asked on cross-examination, "In your opinion, doctor, is there any connection between the cataract on the left eye and on the right?" he answered:

"The only connection established would be the rule of the formation of cataracts, as over 80 per cent. of cataracts that form first in one eye would later form on the other, 20 per cent. of one eye will be cataracts, and the other eye not at all, so that is the only relation one eye could have to the other."

The doctor nowhere testifies that the cataract removed by him from the left eye over eight years before was senile, but such possibly may be inferred from his testimony, especially when considered in connection with his letter to Dr. Jones.

Section 12, part 3, of said Act No. 10, under which these proceedings are had, empowers this court to review only questions of law; all questions of fact determined by the board from competent evidence being conclusive, in the absence of fraud. It must be conceded, as urged by appellants, that the record discloses no testimony, competent or otherwise, to sustain the finding:

"His left eye, operated on in 1905, is of little use, and he is in a condition of total disability on account of the condition of his said eyes."

This finding, however, tends only to confuse, and must be eliminated from consideration, not only because it has no evidential support in the case, but no

claim was ever made for injury to the left eye, and its condition is not in issue. With it eliminated, there is sustaining evidence for the remaining findings of fact essential to support the order sought to be reversed.

The controlling issue raised before the board by appellant's petition for review was whether they had by their evidence conclusively established that the cataract which appeared in claimant's right eye after the injury was senile, and therefore not connected with, or attributable to, such injury. To sustain appellant's contention here this court must therefore be able to say, from the whole record, as a conclusion of law, that the Industrial Accident Board must find, not could find, as a conclusion of fact, that the cataract in the injured right eye is senile and not traumatic, and that Spooner was not, at the time of hearing said petition, under any incapacity attributable to the accident, and resulting injury to that eye, on October 22, 1913.

We conclude that upon such issue different inferences of fact could legitimately be drawn from what the record discloses and, in such case, where the board does not find "that the facts warrant such action" as may be requested under section 14, part 3, of the act creating said board, the court cannot disturb its findings and orders thereon, made while acting within the authority there conferred.

The order complained of is therefore affirmed.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.