HOVEY v. GENERAL CONSTRUCTION CO.

1. MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT—DISCONTINUING PAYMENTS—BURDEN OF PROOF ON EMPLOYER.

On the hearing of an application by an employer for an order under the workmen's compensation act (2 Comp. Laws 1915, § 5467) discontinuing the weekly payments previously awarded to an injured employee, the burden of proof is upon the employer to prove its right to such order.[1]

2. SAME—FINDINGS OF DEPARTMENT CONCLUSIVE IF SUSTAINED BY EVIDENCE.

Under said act, the findings of fact of the department of labor and industry are conclusive, if sustained by any evidential support.[2]

3. SAME.

The finding of the department of labor and industry that the employee's disability, caused by heart trouble and hardening of the arteries, was a result of the injuries received, where supported by medical testimony, is conclusive, and therefore denial of the order petitioned for is affirmed.[3]

Certiorari to Department of Labor and Industry. Submitted June 5, 1925.   (Docket No. 55.)   Decided March 20, 1926.

John Hovey presented his claim for compensation against the General Construction Company for an accidental injury in defendant's employ.   From an order denying a petition to discontinue weekly payments, defendant and the Maryland Casualty Company, insurer, bring certiorari.   Affirmed.

[1]Workmen's Compensation Acts, C. J. § 151; [2]Id., C. J. § 127; [3]Id., C. J. § 127.

Right and extent of review of findings of commission under workmen's compensation acts, see notes in L. R. A. 1916A, 178, 266; L. R. A. 1917D, 186.

*Derham & Derham,* for appellants.

*Solomon W. Patek,* for appellee.

STEERE, J.    On November 15, 1922, plaintiff Hovey sustained an accidental injury while in the employ of defendant General Construction Company.    The injury was caused by the breaking of a plank upon which he was standing and his falling between seven and eight feet "down through a cellar-way," while working at his trade as a carpenter.    The immediately perceptible injuries which disqualified him from labor at that time are stated by the physician who then attended him as, "injury to side and back," 'for which he treated him until February 20, 1923.    An agreement for compensation was entered into between Hovey and his employer agreeable to provisions of the workmen's compensation act under which the latter paid him $14 per week from the time of his injury until about April 12, 1923, when, as he states, he was notified by the defendant casualty company that he was well and "they wasn't going to send me any more money."    But he insisted that he was yet totally disabled from work and that disagreement resulted in his payments being continued until April 1, 1924, after which a petition was filed by the casualty company alleging that plaintiff was "no longer disabled, and has not been disabled for a long time as a result of the said accidental personal injury," asking relief from further payments.    The relief asked was refused on the hearing before a deputy commissioner and his order of refusal was affirmed on appeal to the commission  of  the department of labor and industry.

In affirming the decision of the deputy commissioner denying defendant's application and ordering that the payment of $14 per week be continued "during  a period of total disability" the commissioner without discussing the testimony found:

"That the evidence submitted does not show that applicant's disability as a result of said accident has ended and applicant is entitled to continue to receive compensation at the aforementioned rate until the facts and circumstances warrant a change."

Four witnesses testified touching plaintiff's injuries and physical condition, plaintiff Hovey himself, his attending physican, Dr. Pinkerton, Dr. Stebbins, who had examined him more than once for the defendant casualty company, and Dr. Pierpont who examined him during the trial.

Hovey gave his age as 62 years and his calling that of a carpenter, told briefly of the circumstances of the accident in which he suffered among other things a broken rib, said that until it befell him he had followed his trade steadily for many years, his health was good, he was able to always do a full day's work without any trouble and worked all the time—"every day—nine hours a day" up to the time of the accident, since which time he had never been able to do a day's work at his trade.    He did not undertake to define what ailed him beyond shortness of breath and debility.    Some of his testimony ran as follows:

"Q. Why not?
"A. Because I didn't have breath enough; my breath was too short.
"Q. How about your condition now; is it the same as it was then?
"A. It is worse.
"Q. Have you lost any weight since the accident?
"A. 40 pounds.
"Q. What else is the trouble; have you tried to work since the injury?
"A. I have.  *  *  *  I thought I had to do something.    My son was building a house in Antigo.    I tried to help him there; I could look on and that is about all.  *  *  *
"Q. After the accident could you do the work that you did before?
"A. No sir, no sir, no sir.

"*Q.* Why not?

"*A.* My breath wouldn't allow it."

This was the drift of his testimony, elaborated by details as to his inability to climb ladders, hammer, or saw, or chop, etc., for any length of time, or perform other tasks of his trade because his "breath wouldn't allow it."

The three physicians who examined him at various times after his injury up to the time of the trial were agreed that the direct affliction which incapacitated him from labor was, as stated without technical terms, a bad heart and hardening of the arteries. Dr. Pinkerton said that on February 24, 1923, when he ceased regular attendance of Hovey for his accidental injuries, he considered him then recovered from the injuries to his side and back, that he had no history of any other physical ailments but found on later examination that his pulse was irregular, his heart was enlarged and had a murmur, it bothered him to lie down and breathe, and he complained of palpitation and shortness of breath. Dr. Stebbins, who first examined plaintiff in March, 1923, said he found nothing wrong with his side or back, but his complaint was "shortness of breath and weakness," and on examination he found him afflicted with an irregular and enlarged heart, his blood pressure being normal while he was quiet but below normal when he was active. He defined this trouble as "myocarditis, a thickening with degenerative change in the arteries and heart valves." Dr. Pierpont said the trouble he found plaintiff afflicted with was a "considerably enlarged and irregular heart, in action; there is a slight systolic murmur."

Defendants' contention is that plaintiff fully recovered from his injuries caused by the accident, and no causal connection has been shown between those injuries and the existing unsound condition of his

circulatory organs which may now disqualify him from work at his trade.   The medical men who testified as experts were fully agreed that the malady with which they then found plaintiff afflicted was not of traumatic origin, but is a disease generally of slow development "mostly caused by infection somewhere within the system," the conditions causing it arising from "a septic absorption, auto-intoxicàtion, absorption from the bowels, that might cause it; or as a man grows older various things might cause it, infections of various kinds that have existed."

While adhering consistently to the view that plaintiff's existing trouble could not be and was not originally caused by the accident, when confronted by hypothetical questions based on testimony in the case, as to whether acceleration of his disease was or might be imputable to the traumatic injuries plaintiff suffered in the accident, their answers were more varied and equivocal, tending in certain respects to lend some evidential support to that view.   Plaintiff testified without direct contradiction that right up to the time of his accident he was in good health, active and "all right;" had worked steadily at his trade for years, nine hours a day every working day without any trouble, but from the time of the accident his breath failed him, he lost 40 pounds in weight and was never able thereafter to do a day's work because of his difficulty in breathing and debilitated condition.

Dr. Pinkerton replied that, assuming those facts to be true, the accident could be one factor in his condition which followed it, "we would have to assume that that had an influence in causing it."   Dr. Stebbins replied that in his opinion such a fall might indirectly have something to do with the heart condition he found, explaining:

"When I say indirectly, I would say that the fact that this man who was working steadily up to the time he was injured, and being forced to go to bed and rest

for some time, when the time came for him to get up and go to work again, he then would be in a weakened condition and his heart wouldn't be equal to it.    In that way I think that indirectly the injury might have some bearing on his case.   *   *   *

"Q. In other words, would the fact that he sustained this fall have aggravated the condition, the pre-existing condition, which put him now in the shape in which you find him?

"A. Possibly.   *   *   *   For instance, his heart is used to doing a certain amount of work every day; he is tuned up to a certain degree.   The fact that he would go to bed and lie still and be quiet would do more damage to a man who had that condition than if he kept on working.    You have heard of athletic hearts.    It would do more harm by being quiet with such a condition, because it is used to doing a certain amount of work every day, and these degenerative changes take place.

"Q. It is your theory that the enforced idleness—

"A. Yes, would do more harm.

"Q. Than the trauma itself?

"A. Yes, that is what I meant when I said indirectly."

In answer to hypothetical questions based on plaintiff's testimony, assumed to be true, Dr. Pierpont said the accident "might possibly be the cause" of his disability to work.

"Q. Could he have continued that work for an indefinite period of time except for this exciting cause or fall?

"A. He might have been able to or might not; it is impossible to say.

"Q. Could such a fall or exciting cause destroy that equilibrium (of the heart) and aggravate his condition, such as you now find it?

"A. I think it could.   *   *   *

"Q. Is there a probability that it did?

"A. Well, of course, if these symptoms just date from the time of the accident, it is a fair assumption that the fall had something to do with it, of course.

"Q. With the speeding up?

"A. Certainly.   *   *   *

"*Q.* In other words, the disability from which he is now suffering could have been accelerated or aggravated by this fall?

"*A.* It is possible.

"*Q.* He might have gone on for some time with the pre-existing condition without having had this disturbance he now suffers from?

"*A.* Yes.    *    *    *

"*Q.* Merely having a chronic heart trouble wouldn't prevent him from doing the work of a carpenter?

"*A.* It might not.

"*Q.* It is the acceleration brought about by this exciting cause that brought about this condition?

"*A.* Yes, it might."

This is an application by defendant for an order under the compensation act (2 Comp. Laws 1915, § 5467) that weekly payments previously awarded "be ended." It was incumbent upon defendant as the moving party to prove before the commission its right to such order, and the commission's findings of fact are made by this act conclusive, if sustained by any evidential support.

While it may be far from conclusively settled by the medical testimony that traumatic causes accelerated or had a contributing causal connection with defendant's affliction and resulting incapacity at the time of the application, there is medical testimony to that effect in the record, based on the assumption that certain testimony in the case was true, which was for the commission to determine.

The ultimate negative finding of the commission, which necessarily involved passing upon the questions of fact raised, was not without evidential support.

The award is sustained, with costs to plaintiff.

BIRD, C. J., and SHARPE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.    MOORE, J., did not sit.