## WHITE v. MICHIGAN CONSOLIDATED GAS COMPANY.

1. WORKMEN'S COMPENSATION—FURTHER COMPENSATION—EVIDENCE.
    Evidence presented in common laborer's proceeding to recover further workmen's compensation *held,* to sustain workmen's compensation appeal board's finding that plaintiff was totally disabled for periods covered by the award and antedating it by nearly 3 years and the board's finding that plaintiff was disabled on the last date of hearing and to justify an order for continuing compensation until further order of the department (CL 1948, §§ 413.12, 413.14).

2. SAME—WORKMEN'S COMPENSATION APPEAL BOARD—TRIER OF FACTS.
    The workmen's compensation appeal board, not the Supreme Court, is the trier of the facts in proceedings to recover workmen's compensation (CL 1948, § 413.12).

3. SAME—WEIGHT OF EVIDENCE—CREDIBILITY OF WITNESSES.
    The weight and credibility of the testimony of lay witnesses and of medical witnesses in workmen's compensation proceedings are matters for determination of the workmen's compensation appeal board (CL 1948, § 413.12).

4. SAME—TEMPORARY TOTAL DISABILITY—CONTINUING COMPENSATION.
    An order of the workmen's compensation appeal board to pay workmen's compensation until the further order of the board, made in a case involving temporary total disability, does not finally determine rights to compensation, since a petition to stop, to decrease or to increase compensation is always permissible in order to show circumstances concerning a claimant's physical condition which may have changed from the last date of hearing.

REFERENCES FOR POINTS IN HEADNOTES
[2] 58 Am Jur, Workmen's Compensation § 530.
[3] 58 Am Jur, Workmen's Compensation § 532.
[4, 5] 58 Am Jur, Workmen's Compensation § 493.
[7, 8] 58 Am Jur, Workmen's Compensation § 514.
[9] 58 Am Jur, Workmen's Compensation § 543 *et seq.*

5. SAME—RES JUDICATA.

The doctrine of *res judicata* applies to decisions of the workmen's compensation department when the precise issue of fact or law has been at issue and decided in the preceding adjudication.

6. SAME—RES JUDICATA—CONTINUING COMPENSATION FOR TEMPORARY TOTAL DISABILITY.

The Supreme Court's order on appeal from a previous order of the workmen's compensation appeal board and setting it aside as to continuing compensation for temporary total disability after the previous referee's hearing date and time when board made its order on ground that the record then presented to it did not contain competent evidence upon which the board could have made a finding of continuing disability as a matter of reasonable prediction did not constitute a final adjudication of the rights of the parties so as to preclude a later determination that total disability did in fact exist during such period since the plaintiff's claim, based on actually accrued liability had never been adjudicated.

7. SAME—CLAIM FOR FURTHER COMPENSATION FOR TEMPORARY TOTAL DISABILITY—TOLLING OF LIMITING STATUTE.

Provision of the workmen's compensation act limiting recovery of further compensation to period within 1 year of time when petition therefor was filed is tolled as to claim for continuing compensation for temporary total disability while such claim is pending on appeal (CL 1948, § 413.14).

8. SAME—CLAIM FOR FURTHER COMPENSATION—LIMITATION.

The purpose of the provision of the workmen's compensation act limiting recovery on claim for further compensation to period of 1 year preceding date of filing of application therefor, after compensation has been paid, is to guarantee a defendant prompt notice of claim for subsequent compensation and to prohibit imposing on a defendant the burden of defending a stale claim (CL 1948, § 413.14).

9. COSTS—TWO APPEALS—OFFSET—WORKMEN'S COMPENSATION.

Defendant who was awarded costs on first appeal in proceeding to recover workmen's compensation is entitled to offset such costs against those awarded against it on second appeal.

DETHMERS, C. J., and CARR and KELLY, JJ., dissenting in part.

Appeal from Workmen's Compensation Appeal Board. Submitted June 11, 1957. (Docket No. 52, Calendar No. 47,067.) Decided April 14, 1958. Rehearing denied June 11, 1958.

Albert White presented his claim against Michigan Consolidated Gas Company for compensation because of continuing disability arising from accident while in defendant's employ. Award to plaintiff. Defendant appeals. Affirmed.

*Dann, Rosenbaum & Bloom* (*Bernard L. Kaufman,* of counsel), for plaintiff.

*Dyer, Meek, Ruegsegger & Bullard,* for defendant.

EDWARDS, J. This is the second time plaintiff's claims of disability have been before this Court for adjudication.

Defendant in this proceeding appeals on leave granted from a workmen's compensation award entered by the workmen's compensation appeal board. The award ordered payment of compensation at the rate of $21 per week for disability resulting from an injury to his right knee received by plaintiff in the employment of defendant on August 27, 1949. The award provided weekly payments from November 7, 1952, to the last date of hearing on October 20, 1955, with the exclusion of a total of 5 weeks when plaintiff was temporarily employed on 2 occasions. The award also found plaintiff disabled from his previous occupation on the last date of hearing and ordered continuing compensation until further order of the department.

This plaintiff had previously been paid compensation for disability from the same injury up to November 7, 1952, under another award by the appeal board, which had likewise been appealed to this Court. See *White* v. *Michigan Consolidated Gas Co.,* 342 Mich 160. In that case, this Court disapproved an award of continuing compensation beyond November 7, 1952, apparently on the basis of extended delay in the appeal process and on the finding that the record

then submitted did not contain competent evidence to sustain a finding of continuing disability beyond November 7, 1952.

In rejecting that portion of the appeal board's award which contemplated continuing compensation, this Court said:

"The order of the commission awarding compensation must be based upon competent evidence. In *Foley* v. *Detroit United Railway,* 190 Mich 507, 516, this Court said:

" 'To sustain its award the board must have been able to find from competent testimony a continuing partial incapacity to properly perform the work of a motorman, in which claimant was engaged at the time of the accident.' " *White* v. *Michigan Consolidated Gas Company,* 342 Mich 160, 163.

The order entered by the Court did not remand the case for further proceedings. As a consequence, plaintiff, claiming disability from the same injury subsequent to November 7, 1952, filed application for hearing and adjustment of claim for further compensation on June 28, 1955. After hearings extending between September 20, 1955, and October 20, 1955, a workmen's compensation department referee denied further compensation. When plaintiff appealed, on October 15, 1956, the appeal board reversed the referee's finding and entered the award from which defendant brings the instant appeal to this Court.

Plaintiff's original injury, according to his testimony, occurred August 27, 1949. He was at that time employed as a common laborer by defendant on maintenance work involving defendant's gas mains. Plaintiff testified that he suffered an injury to his knee when he slipped in the mud while carrying pipe to a truck. Plaintiff also reported to defendant's doctor, Dr. Carpenter, who entered a notation at that time:

"Torn internal lateral ligament? Possible cartilage injury?"

A report of the original injury was filed by defendant and 1 day's compensation was voluntarily paid.

On September 13, 1949, plaintiff left the employ of defendant, according to his testimony, because he requested from his foreman a job assignment where he would not have to bend his knee so much, and was told there were no such assignments available.

In the period following plaintiff's departure from the employment of defendant, his testimony indicated recurring difficulty with his knee, but he worked at various types of jobs until April 28, 1952, when he returned to defendant to request medical treatment for his knee. On this day, on referral by defendant, he was seen by Dr. Carpenter. Concerning the visit of April 28, 1952, Dr. Carpenter testified:

"Well, he came in at that time and reported that he was having trouble with his knee. I think probably the company sent him in to me, but that's what he came in for. I had his knee X-rayed and I examined his knee and I felt he had an injury to the internal meniscus of the right knee and I advised him to have an operation."

The operation was performed on May 13, 1952, by defendant's surgeon and with defendant voluntarily assuming the medical costs. Dr. Carpenter's notes showed in relation to the operation:

"A Smiley type of incision was made about 2 inches long extending at an angle from the lower border of the patella posteriorly but avoiding the collateral ligament. The knee joint was opened, the meniscus was found with considerable pathology at the right anterior horn, an old rupture and even granulation tissue was present at the area. The entire

meniscus was removed with the Smiley technique. This operation of course was done under tourniquet with the knee flexed."

Plaintiff left the hospital May 21, 1952, and was seen by Dr. Carpenter on August 18, 1952, who at that time felt that he had made a good recovery and was able to return to work.

At the original hearing the plaintiff gave testimony to the effect that he had been unable to find work which he was able to do. And, as we have previously indicated, the appeal board found a continuing disability, which was reversed for lack of competent evidence by this Court. *White* v. *Michigan Consolidated Gas Co., supra.*

The record of the subsequent hearing on September 20–22 and October 20, 1955, which is now before us contains testimony from plaintiff, his wife and 3 physicians. From the date of the operation referred to above down to the date of the second hearing, plaintiff indicated that he had been unable to work except for 2 brief periods:

"*Q.* All right. Now, what was the reason for your not working between November 7, 1952, and February of 1954?

"*A.* Well, I wasn't able to work, my leg was bad.

"*Q.* What do you mean your leg was bad?

"*A.* Well, it gives away and it swells up and it stays sore just about all of the time.

"*Q.* What do you mean by gives away?

"*A.* Well, it gives away when I'm walking or whatever I'm doing at the time it gives away unexpected.

"*Q.* Does it lock on you at any time?

"*A.* Yes, it does. If I squat down and stoop, and if I don't get up just right it will lock.

"*The Referee:* What leg is that?

"*Q.* (By Mr. Kaufman) What leg is that, Mr. White?

"*A.* It is my right leg."

Concerning one of the employment episodes, plaintiff testified:

"*Q.* Now, did you do this without any distress?

"*A.* Well, I had very much trouble doing it.

"*Q.* What do you mean by very much trouble doing it, what gave you the trouble?

"*A.* My leg was weak, it wouldn't stand up under the weight of the wheelbarrow.

"*Q.* Did you have any episodes while working for Glenn Long in which your leg gave out from under you?

"*A.* Yes, I did.

"*Q.* Could you describe them?

"*A.* Well, one particular time I was wheeling the cement, he told me to put it in 1 place and before I got to that place my leg gave way and I spilled it all over his legs.

"*Q.* Who is that?

"*A.* The boss, Glenn Long.

"*Q.* Your leg gave way while you were wheeling a wheelbarrow full of cement?

"*A.* Yes.

"*Q.* And the cement went on Mr. Long's legs?

"*A.* Yes."

During this entire period, however, plaintiff did not seek further medical attention, and his only treatment was the application of liniment and heat pads. Dr. Raymond F. Lipton, an orthopedic surgeon, testified without objection concerning an examination of plaintiff on September 20, 1955, as follows:

"*A.* I obtained a history from this man of previous injury and surgery, I listened to his complaints and then I examined him. This was a 30-year-old white male weighing 215 pounds, who is 5 foot 8 inches tall. He is quite hard of hearing and brought his wife as an interpreter with him.

"In examining the right knee, there was a 2-inch anterior medial scar vertically which was somewhat tender. There was tenderness to pressure over the

lateral side of the joint, and over the posterior medial aspect of the joint there was exquisite tenderness. There was another 2-inch rounded scar in the middle third of the thigh anteriorally which was the result of a boil which he had many years before. There was no atrophy of the muscles of the thigh or of the leg, and there was no ligamentous instability of the knee joint itself. He was able to squat and rise unassisted. He was able to stand on his toes and his heels without assistance. On checking the knee joint, I performed the Murray test, which consists of acute flexion of the joint and straightening out the knee, with the knee pushed first from one side to the other. That is putting tension on the joint and I elicited a loud snapping sound on one occasion. At the same time the patient complained of pain. Other than that there was no other significant physical findings. His general physical condition was good, and blood pressure was 140 systolic and 80 diastolic.

"*Q.* What diagnosis, if any, did you make at that time, doctor?

"*A.* The diagnosis that I made was internal derangement of the right knee joint.

"*Q.* Now, doctor, this exquisite tenderness at the posterior medial aspect of the knee, as well as this loud snapping sound with accompanying pain elicited after the Murray test, would that be indicative of any particular derangement in the knee, any specific derangement?

"*A.* Well, it is necessary to use the history that I obtained along with it to make a diagnosis. The sign and the tenderness in itself is not significant without the history."

Another surgeon called by plaintiff gave a similar diagnosis, also without objection, of "internal derangement of the right knee joint." Both of them testified that the condition of the knee was disabling as to types of work involving knee bending, and could have been causally related to the injury previously referred to.

Defendant's medical witness, Dr. Carpenter, on the contrary found no objective symptoms indicating derangement of the knee, and felt that the operation for removal of cartilage had produced a good result. Dr. Carpenter indicated that he did not believe plaintiff's history of repeated episodes when his knee would "lock" or "give away."

The workmen's compensation appeal board, having weighed the conflicting evidence pertaining to disability, unanimously agreed on a finding of fact that plaintiff was still disabled on October 20, 1955, from performing the work he was performing at the time of his injury, and entered the award which we have referred to above.

The first of the issues which we believe we should deal with is, as stated by appellant:

"Was there any competent evidence in the record to sustain a finding by the appeal board that the appellee was totally disabled at any time since November 7, 1952?"

Whatever may have been the state of the record at the time this Court previously heard this matter, we are satisfied that the current record contains competent evidence from which the appeal board could have found plaintiff disabled as a result of his injury for the specific periods of the award. We also feel that there is competent evidence to support the finding that plaintiff was disabled on the last date of hearing and the order for continuing compensation until further order of the department.

We are aware that 2 referees who have heard this plaintiff's testimony have disbelieved him and agreed with Dr. Carpenter's skepticism about his version of continuing trouble with his knee. This Court, however, is not the trier of the facts. The appeal board is required by statute to undertake that responsi-

bility.  CL 1948, § 413.12 (Stat Ann 1950 Rev § 17.186).

The appeal board in this matter apparently believed plaintiff's positive testimony concerning his symptoms and inability to get work, as well as the supporting testimony of his medical witnesses.  The weight and credibility of the testimony of lay witnesses and of medical witnesses in workmen's compensation proceedings are matters for determination of the appeal board.  *Johnson* v. *Pearson,* 264 Mich 319; *Hood* v. *Wyandotte Oil & Fat Co.,* 272 Mich 190; *Jesionowski* v. *Allied Products Corporation.* 329 Mich 209; *Alexander* v. *Covel Manfg. Co.,* 336 Mich 140.

We deal in this case with an instance of temporary total disability.  In such a situation, the device employed by the appeal board in ordering payment of compensation until further order of the board, we have many times approved.  *Hovey* v. *General Construction Co.,* 233 Mich 531; *Warner* v. *Michigan Electric Railway Co.,* 248 Mich 60; *Pretzer* v. *State Psychopathic Hospital,* 286 Mich 454; *Lynch* v. *Briggs Manfg. Co.,* 329 Mich 168.

Such an order does not finally determine rights to compensation.  A petition to stop, to decrease or to increase compensation is always permissible in order to show circumstances concerning a claimant's physical condition which have changed from the last date of hearing.  *Hood* v. *Wyandotte Oil & Fat Co., supra; Catino* v. *Morgan & Wright Co.,* 272 Mich 154; *Goines* v. *Kelsey Hayes Wheel Co.,* 294 Mich 156.  Indeed, in view of plaintiff's age and the nature of the injury, it is to be hoped that time or further medical treatment will occasion still further consideration of this case.

We believe that what has been said serves to answer appellant's contention that the previous order of this Court in *White* v. *Michigan Consoli-*

*dated Gas Company, supra,* was *res judicata* as to compensation claimed between the dates of November 7, 1952 (the previous referee's hearing date) and June 4, 1954 (the previous appeal board order date). The doctrine of *res judicata* has been held to apply to decisions of the workmen's compensation department. *Besonen* v. *Campbell,* 243 Mich 209. However, for the doctrine of *res judicata* to bar a subsequent proceeding, the precise issue of fact or law must have been at issue and decided in the preceding adjudication. *Jacobson* v. *Miller,* 41 Mich 90; *Estate of Beckwith* v. *Spooner,* 183 Mich 323 (Ann Cas 1916 E, 886) *Viaene* v. *Mikel,* 349 Mich 533; annotation, 122 ALR 550; 58 Am Jur, Workmen's Compensation, §§ 508, 510. Obviously, in the period between the referee's hearing and appeal board decision, the crucial facts pertaining to disability could change to the advantage of either party without any adjudication upon such change. This was recognized in the order of the appeal board, ending "until the further order of the workmen's compensation department."

While this Court set aside the appeal board order as to continuing compensation beyond November 7, 1952, such an action did not finally determine the rights of the parties either. This Court held that the record then presented to it did not contain competent evidence upon which the appeal board could have made a finding of continuing disability as a matter of reasonable prediction. This Court's order did not mean that in the event such disability did in fact occur that a subsequent showing and claim for compensation would be barred. Plaintiff's claim based on actually accrued liability had never been adjudicated before the instant proceeding. To the extent that language in *Webber* v. *Steiger Lumber Company,* 322 Mich 675, seems to stand for a contrary result as to the period between the dates of hearing and appeal board award, it is overruled.

Appellant presents 2 other questions which appellee and the appeal board claim it waived in the proceeding below. Nonetheless, we will comment briefly on both.

Appellant claims that all liability prior to 1 year preceding the filing of the second application for hearing and adjustment of claim is barred by part 3, § 14, of the workmen's compensation law (CL 1948, § 413.14 [Stat Ann 1950 Rev § 17.188]). We disagree. We hold that while a claim for continuing compensation applicable to the period in dispute was pending on appeal to this Court, the provisions of part 3, § 14, were tolled. 54 CJS, Limitations of Actions, § 248; 34 Am Jur, Limitation of Actions, § 237. Obviously this section was passed to guarantee a defendant prompt notice of claim for subsequent compensation, and to prohibit imposing on a defendant the burden of defending a stale claim.

If one thing is clear about this record, it is that plaintiff since May 20, 1952, has consistently and vigorously claimed compensation by every means at his command. The notice of claim and litigation for it has been continuous. We do not believe the legislature could have intended the limitation to be effective in such a situation.

The public policy upon which the tolling of statutes of limitation by the commencement of litigation is based is illustrated by a provision of the Michigan judicature act:

"If, in any action, duly commenced within the time limited in this chapter, and allowed therefor, the writ or declaration shall fail of a sufficient service or return, by any unavoidable accident, or by any default or neglect of the officer to whom it is committed, or if the writ be abated or the action otherwise avoided or defeated, by the death of any party thereto, or for any matter of form, or if after a verdict for the plaintiff, the judgment shall be arrested, or

if a judgment for the plaintiff shall be reversed on a writ of error, the plaintiff may commence a new action for the same cause, at any time within 1 year after the abatement or other determination of the original suit, or after the reversal of the judgment therein; and if the cause of action does by law survive, his executor or administrator may, in case of his death, commence such new action within the said 1 year." CL 1948, § 609.19 (Stat Ann § 27.611).

In this regard, a Federal district court has said:

"Statutes of journey's account originated in England and have long existed, in varying forms, among the States. The courts have construed them liberally in furtherance of their purpose—to enable controversies to be decided upon substantive questions rather than upon procedural technicalities. *Sachs* v. *Ohio Nat'l Life Ins. Co.* (CCA), 131 F2d 134; *Haught* v. *Continental Oil Co.*, 192 Okla 345 (136 P2d 691); *Greulich* v. *Monnin*, 142 Ohio St 113 (50 NE 2d 310, 149 ALR 477); *Hayden* v. *Caledonia National Bank*, 112 Vt 491 (28 A2d 389, 142 ALR 1178); *People, ex rel. Jefferson Hotel Corp.*, v. *Woodward*, 178 Misc 397 (34 NYS2d 632); *Johnston* v. *Sikes*, 56 Conn 589; *Coffin* v. *Cottle*, 16 Pick (33 Mass) 383." *Wilt* v. *Smack*, 147 F Supp 700, 702.

While we recognize that the statutory provision quoted is not specifically applicable to the limitation provision contained in the workmen's compensation act, as indicated above we apply the same reasoning to the situation currently before us.

As to the offset of court costs of the first proceedings, we believe this issue is moot since plaintiff under what we have written is entitled to costs in this appeal, and defendant is obviously entitled to offset his costs against those here awarded.

Affirmed. Costs to appellee.

SMITH, BLACK, and VOELKER, JJ., concurred with EDWARDS, J.

CARR, J. (*dissenting in part*). While in the employ of the defendant, the plaintiff, under date of August 27, 1949, sustained an accidental injury to his right knee, said injury arising out of and in the course of the employment. Defendant filed its basic report of the injury on September 9th following. On September 13th of the same year plaintiff left defendant's employ and later, in April, 1952, requested medical treatment for the knee. In accordance with such request an operation was performed, following which compensation was paid voluntarily by defendant for some weeks.

Subsequently plaintiff filed application for the payment of compensation in accordance with the statute.* A hearing, beginning November 6, 1952, was had before a deputy commissioner, resulting in an award of compensation for a portion of the period of time following the injury, and a finding that plaintiff's disability had terminated as of August 18, 1952. On appeal to the workmen's compensation commission the award made by the deputy was modified on the basis of a holding that the employee was still disabled at the time of the hearing before the deputy, and that he was entitled to compensation from August 18, 1952, until the further order of the commission.

On leave granted, the award of the workmen's compensation commission was appealed to this Court, where the case was decided March 9, 1955. *White v. Michigan Consolidated Gas Company*, 342 Mich 160. On the record in the cause it was determined that there was no testimony on which to base a finding that plaintiff's disability continued from and after November 6, 1952, and that the award could not be sustained insofar as it provided for the payment of compensation thereafter until the further order of

---

* PA 1912 (1st Ex Sess), No 10, as amended (CL 1948, § 411.1 *et seq.* [Stat Ann 1950 Rev § 17.141 *et seq.*]).

the commission.  Accordingly the proceeding was remanded with directions to modify the award in accordance with the holding of this Court.  It will be noted from the opinion of the Court in the case that the decision was based wholly on a lack of testimony to support that portion of the award from which the appeal was taken.  The question at issue was whether there was such testimony.  In deciding the matter the Court could not, and did not, go beyond the determination of that issue.  The remanding order may not be construed as an affirmative finding that plaintiff did not suffer a compensable disability during the period in question.  It follows that the prior decision (342 Mich 160) is not *res judicata* as to such question.

The conclusion indicated is not at variance with the holding in *Webber* v. *Steiger Lumber Company,* 322 Mich 675.  Involved in that case was an award of the workmen's compensation commission made on July 15, 1946, based, in part, on the finding specifically set forth that compensable disability had ceased 4 months previously.  In other words, there was an affirmative finding, made by the trier of the facts, that disability did not exist following a specified date.  From the award so made no appeal was taken.  Citing the holding in *Gulec* v. *Chrysler Corp.,* 292 Mich 711, it was held that an award in a subsequent proceeding for additional compensation could not be made for the 4 months period preceding July 15, 1946.  In the case at bar a wholly different situation is involved.  The *Webber Case* may not be regarded as overruled by the decision in this proceeding.

The record before us in the present case contains testimony supporting the conclusion of the appeal board that plaintiff was in fact suffering compensable disability during the period from November 7, 1952, to the date of hearing before the referee, with

the exception of certain brief periods when he was employed and for which no compensation was awarded. There is also testimony in support of the claim that the disability found by the board to exist at the time of the hearing was continuing in nature. Such being the situation this Court is bound by the factual findings of the board. *Hooks* v. *Wayne County Road Commissioners,* 345 Mich 384; CL 1948, § 413.12 (Stat Ann 1950 Rev § 17.186).

Plaintiff's petition for further compensation, involved in the instant proceeding, was filed June 28, 1955. Compensation was allowed beginning November 7, 1952. On behalf of appellant it is claimed that under part 3, § 14, of the workmen's compensation act, as amended by PA 1943, No 245,[*] an award for the period antedating more than 1 year the filing of said application was unauthorized. The section in question reads as follows:

"If payment of compensation is made (other than medical expenses) and an application for further compensation is later filed with the commission, no compensation shall be awarded by the commission for any period which is more than 1 year prior to the date of the filing of such application."

The proceeding now before the Court was initiated by plaintiff's application for further compensation, filed as above stated. He cannot rely on the application filed May 21, 1952. As before noted, on the hearing of said application he failed to offer proof on which to base a finding that he did continue to suffer compensable disability after November 6, 1952. We are now concerned with his later application which is the basis of the present proceeding. The wording of the statute, as amended in 1943, clearly indicates an intention on the part of the legislature to limit an award, on an application for further com-

---

[*] CL 1948, § 413.14 (Stat Ann 1950 Rev § 17.188).

pensation under the statute, to a period beginning not more than 1 year preceding the filing of such application.

In *Tarnow* v. *Railway Express Agency,* 331 Mich 558, an employee who, as he claimed, had sustained a compensable injury prior to the amendment of 1943 sought further compensation. On November 21, 1950, an award was granted by the workmen's compensation commission allowing compensation for a period of 500 weeks beginning March 10, 1944. The application was filed on October 14, 1949. On behalf of defendant it was claimed that the statutory provision, above quoted, applied, although enacted in its amended form after the plaintiff had sustained his injury, and that, in consequence, the award as made was unauthorized. It was held that the amendment was not retroactive and did not apply to plaintiff, it not being in effect at the time of the accidental injury sustained by him. It was recognized, however, that if applicable it would bar recovery of compensation for the disability existing prior to October 14, 1948. The following language indicates the view of the Court as to the purpose of the amendment and the interpretation thereof (p 566):

"It seems obvious that the purpose of the amendment was to limit the amount of recovery in certain cases. Such result must follow in any instance where the statute in its present form is invoked to defeat recovery, partially or wholly, and is applicable. The amendment may not be regarded as relating merely to procedure, nor may it be classed as remedial legislation."

In certain respects the facts in *Lynch* v. *Briggs Manfg. Co.,* 329 Mich 168, are analogous to those in the case at bar. There plaintiff Lynch sustained a compensable injury on March 26, 1946, his knee being fractured. He was paid compensation until September 7th following when he returned to work

at his former rate of pay. On October 3, 1946, he filed an application for hearing and adjustment of his claim for compensation. The matter was set for hearing but the application was withdrawn under date of February 11, 1947. A second application, filed May 6, 1947, was dismissed, for lack of prosecution, on September 2d of the same year. A third application for the payment of additional compensation was made April 23, 1948. This resulted in a hearing and denial of compensation by the deputy commissioner. The commission reversed the deputy, allowing compensation for total disability "from March 27, 1946 to September 7, 1946, from November 13, 1946 to April 16, 1947 and from May 22, 1947, until the further order of the commission." As in the case at bar, the award as made sought to allow compensation for a period antedating by more than 1 year the filing of the application on which the proceeding was based. After quoting the section of the statute in question and declaring that "The power of the commission to award compensation is expressly limited" by said section, it was said (p 173):

"Under this statutory provision the period for which compensation could be awarded in the instant case could not extend retroactively beyond 1 year prior to April 23, 1948, the date upon which plaintiff's present petition was filed. It follows that the award of the commission for March 27, 1946, to September 7, 1946, and for November 13, 1946, to April 16, 1947, must be vacated; but the award 'from May 22, 1947, until the further order of the commission' should be and is affirmed."

While reference was made in the *Lynch Case* to the fact that 2 prior applications had been made, one being withdrawn and the other dismissed for lack of prosecution, it was obviously considered that the proceeding under the third application was not thereby affected in any way. In the case at bar the

award under consideration by this Court in the prior case (342 Mich 160) failed as to the provision for compensation from and after the date of hearing before the deputy because of lack of proof necessary to support it. From the practical standpoint the situation would have been essentially the same had plaintiff withdrawn any claim for continuing compensation from and after the date of hearing. Failure to offer requisite proof amounted to a lack of prosecution as to such portion of his claim.

The limitation imposed by the legislature on the power of the appeal board to award compensation is expressed in language that can leave no doubt as to the intention. The bar to such compensation beginning more than 1 year prior to the filing of application therefor is absolute in terms and has reference to the *power of the commission* in the premises. It relates to the relief that may be granted in a purely statutory proceeding and is not analogous to statutes relating to the bringing of an action at law within a specified period after the accrual of the right of action.

The case should be remanded to the appeal board with directions to set aside that part of the award covering the period of time antedating by more than 1 year the filing of the application involved therein. Neither party having prevailed in full, no costs should be allowed.

DETHMERS, C. J., and KELLY, J., concurred with CARR, J.

KAVANAGH, J., took no part in the decision of this case.