WILLIAM BISHOP & others *vs.* CITY OF FALL RIVER & others.

Bristol.    May 6, 1963. — July 2, 1963.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Res Judicata.*

Where, in a suit in equity against a city by some of its welfare employees under G. L. c. 31, § 47E, to enforce payment to them of certain annual step rate increases set forth in a compensation plan as amended by the first of two amendments, there was a decree in the petitioners' favor from which there was no appeal, and subsequently three of the petitioners in such suit and other welfare employees brought a similar suit against the city to enforce payment of salary increases set forth in the compensation plan as amended by the second of the two amendments, the issue in the later suit should not be held to be res judicata as to such three petitioners by reason of the decree in the earlier suit since such a holding would result in injustice through their receiving compensation higher than the compensation of the fellow employees similarly situated who had not been parties to the earlier suit.

PETITION IN EQUITY filed in the Superior Court on April 2, 1962.

The suit was heard by *Smith,* J.

*John T. Farrell, Jr.,* Assistant Corporation Counsel, for the respondents.

*Philip Goltz* for the petitioners.

Bishop *v.* Fall River.

SPALDING, J. This is a petition in equity under G. L.
c. 31, § 47E, to enforce certain provisions of the civil serv-
ice laws. At least two of the petitioners are taxable in-
habitants of the city of Fall River (city) and all the peti-
tioners hold permanent positions in the city.

The case was submitted on agreed facts: On December
11, 1951, the city accepted the provisions of G. L. c. 31,
§ 47E, which provides that welfare employees of cities and
towns shall be paid certain step rate increases for each year
of service.[1] On January 1, 1952, the Director of Civil Serv-
ice, with the approval of the welfare compensation board,
established a welfare compensation plan, which provided
minimum and maximum salaries for welfare employees and
set forth a table of annual step rate increases in salary be-
ginning with the prescribed minimum and continuing until
the maximum salary had been reached.

Subsequent to the adoption of the basic welfare compen-
sation plan in 1952, two amendments to the plan were
adopted, to become effective in 1957 and 1959, respectively.
Each amendment increased the prescribed minimum and
maximum salaries to be paid to welfare employees. After
each amendment to the basic compensation plan, the city
readjusted its salary scale but did not credit the workers
with the step rate increases earned under the prior plans.

In 1957 a petition was brought by certain employees in
the public welfare department of the city, and the Superior
Court in its final decree ordered that after the adoption of
each amendment to the compensation plan the petitioner-
employees were entitled to receive the new minimum plus

[1] Section 47E at times here material read: ''Persons holding positions
referred to in section forty-seven C shall be given an annual step-rate increase,
to be set forth in the compensation plan established under section forty-seven
D, on the first day of July following the anniversary of the date of their
receiving the minimum salary for the position which they hold, but such
increase shall not entitle such persons to any change of rating or increased
authority. Such increase shall be fixed by the board referred to in section
forty-seven D and shall be paid annually until the maximum salary set forth
in the compensation plan established under section forty-seven D for the
positions so held has been reached. The superior court, upon suit by the
attorney general or petition of one or more taxable inhabitants of a city
or town in which it is alleged that the provisions of this section or sections
forty-seven C and forty-seven D are not enforced, may, in law, or equity,
enforce said sections.''

the step rate increases earned under the prior plan. The city adjusted the salaries of the employees in accordance with that decree and the litigation terminated without appeal. Three of the petitioners in the present case were parties to the prior litigation. A similar petition was brought in 1959 by one Berube and others, and in 1961 the Superior Court, relying on the decision in the 1957 case, ruled in favor of the employees. No appeal was taken from the decree in that case. None of the petitioners in the present proceeding was a party to the Berube proceeding.

The petition here was brought in April of 1962 and in August of that year the court entered a decree ordering that the petitioners' salaries "be re-established by adding thereto the increments earned to date by being advanced to that median or maximum compensation grade established by the Amended Compensation Welfare Plans which are similar or comparable to their own. . . ." From this decree the city appealed.

Three of the petitioners here who were parties to the 1957 proceeding contend that the favorable decree in that litigation is res judicata and, therefore, the city is concluded by the court's previous construction of the 1957 amendment to the plan. We do not agree.

The question presented in this proceeding is purely a question of law. Hitherto, this court has not had occasion to consider the application of res judicata to matters of law when such application would treat members of the same class differently. Restatement: Judgments (1948 Supp.), § 70, comment f, provides, in part, that the "determination of a question of law by a judgment in an action is not conclusive between the parties in a subsequent action on a different cause of action, even though both causes of action arose out of the same subject matter or transaction, if it would be unjust to one of the parties or to third persons to apply one rule of law in subsequent actions between the same parties and to apply a different rule of law between other persons." We are of opinion that this principle is controlling. Assuming that this proceeding arises "out of

the same subject matter or transaction," the city, in this separate and distinct cause of action to enforce a subsequent amendment to the plan, should not be bound by the prior decree that adjudicated the petitioners' rights under the 1957 amendment. Such a decision would result in the employees who were parties to the prior litigation receiving higher compensation than their fellow workers who were similarly situated. The injustice to these workers who were strangers to the prior proceeding is obvious.

All five petitioners argue that the decision in the Berube case in 1961 (to which they were not parties) estops the city to contest the issues of law decided in that proceeding. In support of this position the petitioners rely on the case of *Giedrewicz* v. *Donovan,* 277 Mass. 563. This argument has been fully discussed and rejected in the case of *Albernaz* v. *Fall River, ante,* 336.

In this court the petitioners have relied solely on res judicata and collateral estoppel and have not argued the question of the construction of the amendments. However, as to that question our decision in *Albernaz* v. *Fall River, ante,* 336, is controlling.

The final decree is reversed and a new decree is to be entered dismissing the petition.

*So ordered.*