HLADY v WOLVERINE BOLT COMPANY

Opinion of the Court

1. Workmen's Compensation—Findings of Fact—Evidence.

Findings of fact by the Workmen's Compensation Appeal Board are conclusive if supported by the evidence presented.

2. Workmen's Compensation—Res Judicata.

The doctrine of res judicata applies to workmen's compensation proceedings.

3. Workmen's Compensation—Award of Compensation—Future Condition—Subsequent Awards.

A workmen's compensation award is an adjudication as to the condition of the injured workman at the time it is entered, *and conclusive of all matters adjudicable at that time,* but it is not an adjudication as to the claimant's future condition and does not preclude subsequent awards or subsequent modifications of the original award upon a showing that the employee's physical condition has changed.

4. Judgment—Res Judicata—Facts Litigated—Law Adjudicated.

The doctrine of res judicata applies not only to facts previously litigated, but also to points of law which were necessarily adjudicated in determining and deciding the subject matter of the litigation.

References for Points in Headnotes

[1, 9] 58 Am Jur, Workmen's Compensation § 530.

[2–7, 10, 11, 13, 16] 46 Am Jur 2d, Judgments § 394 *et seq.*
  58 Am Jur, Workmen's Compensation §§ 493, 508 *et seq.*
  Matters concluded, in action at law to recover for the same injury, by decision or finding made in workmen's compensation proceeding. 84 ALR2d 1036.
  Res judicata as regards decisions or awards under workmen's compensation acts. 122 ALR 550.

[7, 11, 12] 58 Am Jur, Workmen's Compensation §§ 33, 287, 404.

[8, 9] 58 Am Jur, Workmen's Compensation § 281 *et seq.*

[14] 58 Am Jur, Workmen's Compensation § 22.

[15] 58 Am Jur, Workmen's Compensation §§ 193 *et seq.,* 283.

[17] 58 Am Jur, Workmen's Compensation §§ 278, 287 *et seq.*

5. JUDGMENT—ACTION—ISSUES OF FACT—ISSUES OF LAW.

> A second action must fail, where issues of fact or law have been finally decided by a court of competent jurisdiction in one legal action which are essential to the maintenance of another legal action.

6. JUDGMENT—RES JUDICATA—APPEAL AND ERROR—ISSUE ON APPEAL.

> Plaintiff may not concede an issue, necessarily determinative of and included in the judgment of the Michigan Supreme Court, and then, after another has successfully raised the issue she did not wish to contest, ask the Court again for relief; the doctrine of res judicata bars this from happening.

7. WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION ACT—ONE-YEAR-BACK RULE—FINGERS—BENEFITS—LIMITATION OF ACTIONS.

> The Workmen's Compensation Act contains a one-year-back provision and in effect this provision prevents the courts or the Workmen's Compensation Appeal Board from awarding payment of benefits for *any period of time* prior to one year back from the filing of the petition for hearing; where plaintiff was injured in an industrial accident that amputated four fingers on her right hand on October 18, 1945 and filed her petition with the department on November 16, 1967, the one-year-back rule, which applies, would prevent the Supreme Court from awarding benefits covering any period of time prior to November 16, 1966; yet the act itself mandates that at an absolute maximum, plaintiff may not be compensated for any period of time extending beyond 500 weeks from October 18, 1945; thus no benefits may be awarded to the plaintiff for any period beyond the year 1955; it was the intent of the Legislature in enacting this built-in statute of limitations into the Workmen's Compensation Act that it apply to situations akin to the instant one (MCLA 413.14).

8. WORKMEN'S COMPENSATION—LOSS OF USE OF HAND—DISABILITY—ABILITY TO WORK.

> The test to be applied to plaintiff's claim, that her industrial injury which amputated four fingers on her right hand had resulted in the industrial loss of use of her right hand and/or general disability and which was filed after the expiration of the statutory 100 week payment for the specific loss sustained, is, after the passage of the number of weeks allowed for the specific loss or losses falling short of declared total disability, whether the injured workman can go back to work.

9. WORKMEN'S COMPENSATION—ABILITY TO WORK—RECORD—PROOFS—
   FINDINGS OF FACT—EVIDENCE—BURDEN OF PROOF.

   Record did not support plaintiff's position that she has been
   unable to work from 1945 through 1955, the approximate
   length of time for which benefits are claimed, where plaintiff
   has entered *no* proof as to her wage-earning capacity between
   1945 and 1955 and the Workmen's Compensation Appeal Board
   made no factual findings regarding plaintiff's wage-earning
   capacity for the crucial period of time, the plaintiff presented
   no evidence of this impaired ability to earn wages to the
   department and it was the plaintiff's burden to produce such
   evidence; findings of fact in workmen's compensation cases
   must be supported by the record.

### CONCURRING OPINION

### T. G. KAVANAGH, C. J., and LEVIN, J.

10. JUDGMENT—ACTION—RES JUDICATA.

    *The general rule is that all issues which were or could have been
    raised in an action are barred under the doctrine of res judi-
    cata; the policy of the law is to require that the parties raise
    and join all matters which can be litigated in one action and
    that there be an end to litigation.*

11. JUDGMENT—RES JUDICATA—CHANGE OF LAW—WORKMEN'S COM-
    PENSATION.

    *A change of law, like a change of fact, eliminates the bar of res
    judicata where a claimant seeks continuing benefits under a
    statute providing income maintenance.*

12. JUDGMENT—RES JUDICATA—CHANGE OF LAW—CASE LAW.

    *The applicability to cases previously adjudicated of a change in
    law effected by court decision should be analyzed in the same
    way as where the Legislature amends a statute: whether as a
    matter of policy the new rule of law should apply retroactively
    as well as prospectively; if the new rule is to apply only
    prospectively then, in general, the old rule should be applied to
    pre-new-rule cases where there has been no final adjudication
    as well as those where adjudication has become "final".*

13. JUDGMENT—RES JUDICATA—PUBLIC POLICY.

    *Res judicata is not an absolute doctrine; it may give way when in
    irreconcilable conflict with other, more important public poli-
    cies.*

14. WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION ACT—
    CONSTRUCTION.

*The Workmen's Compensation Act is remedial legislation which the Supreme Court has liberally construed to effectuate its purposes.*

15. WORKMEN'S COMPENSATION—DISABILITY BENEFITS—ENTITLEMENT
    —OPEN TRANSACTION.

*Workmen's compensation benefits are of two kinds: those which are awarded for a specific loss (a "closed" transaction) and those which are awarded for continuing disability (an "open" transaction); disability benefits are a form of income maintenance for persons whose wage-earning capacity has been suspended or terminated, and entitlement to such benefits depends on the circumstances at the time of application and payment.*

16. WORKMEN'S COMPENSATION—CHANGE OF LAW—CHANGE OF FACTS.

*The right to workmen's compensation disability benefits depends on whether, at a given point in time, the claimant is within the statutory intendment; a determination that a claimant is not today entitled to disability benefits does not preclude reexamination of his entitlement should the facts or the law, by legislative amendment or court decision, change tomorrow.*

CONCURRING OPINION

WILLIAMS, J.

17. WORKMEN'S COMPENSATION—SPECIFIC LOSSES—TOTAL DISABILITY—
    EVIDENCE—RECORD—SUBSEQUENT AWARDS.

*Claimants in workmen's compensation cases, which present a proper evidentiary record of impaired ability to earn wages and in which there are no procedural bars to recovery, have a substantive right to compensation pursuant to the rule that an injured workman who had suffered various specific losses and had been paid the statutory amount for these specific losses but who, because of the natural consequences which normally follow from various amputations was still disabled at the expiration of the benefits for these amputations was entitled to collect further compensation under the general disability sections of the Workmen's Compensation Act (MCLA 412.9).*

Appeal from Court of Appeals, Division 1, J. H. Gillis, P. J., and Bashara and O'Hara, JJ., affirming the Workmen's Compensation Appeal Board.

Submitted May 10, 1974. (No. 17 May Term 1974, Docket No. 54,840.) Decided January 21, 1975.

Claim by Mary Hlady against Wolverine Bolt Company and Michigan Mutual Liability Company for workmen's compensation for the loss of industrial use of her right hand. Award denied. Plaintiff appealed to the Court of Appeals. Affirmed. Plaintiff appeals. Affirmed.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Rodger G. Will*), for plaintiff.

*LeVasseur, Werner, Mitseff & Brown* (by *Grahame G. Capp*), for defendants.

T. M. KAVANAGH, J. On October 18, 1945 Mary Hlady's right hand got caught in a punch press at work. This industrial accident amputated four fingers on that hand. Her employer, Wolverine Bolt Company, reported this injury to the Compensation Commission of the Department of Labor and paid workmen's compensation benefits for the loss of her four fingers.

Upon expiration of the statutory 100 week payment for the specific loss sustained, plaintiff filed an application for hearing and adjustment of claim with the compensation commission in December, 1947. In that application the plaintiff alleged that her industrial injury had resulted in the industrial loss of use of her right hand and/or general disability.

At a hearing held in 1948 Commissioner McAuliffe stated the issue in this case precisely as follows:

"The present issue is solely whether plaintiff still has any right to compensation in addition to that heretofore paid for the specific loss."

After hearing the medical testimony, Commissioner McAuliffe found as follows:

"I further find that the plaintiff failed to establish that she has any further disability *over and beyond the natural consequences of the loss of her four fingers on the right hand.* Hence her claim for compensation in addition to that paid for her specific losses is denied." (Emphasis added.)

On review of this decision in 1948, the Workmen's Compensation Commission reversed the commissioner, finding "that the plaintiff has lost the industrial use of her right hand as the result of her amputations of October 18, 1945".

This Court granted leave to appeal from that decision of the Compensation Commission and decided the issues raised in *Hlady v Wolverine Bolt Co,* 325 Mich 23; 37 NW2d 576 (1949). In reversing the Compensation Commission, this Court stated, p 25:

"The record is devoid of testimony tending to prove that plaintiff has suffered *any different or greater loss than normally results from the amputation of 4 fingers of a hand.* Notwithstanding plaintiff claimed that the amputation of her fingers resulted in disabling 'sequelae' and 'general disability,' the commission found none *except disability which normally follows such amputations."* (Emphasis added.)

This Court denied any further benefits to plaintiff.

In 1967 plaintiff again filed a petition with the Workmen's Compensation Department asking for further benefits. This statement by the Workmen's Compensation Appeal Board, on review of the case in 1972, put the present issue in this case squarely in focus.

"The Referee's fact-finding accepted by this Board, is

that no change in plaintiff's physical condition has taken place since her 1948 adjudication. The only change of any kind has been the *Van Dorpel*[1] decision, *supra.*"

The Appeal Board denied further benefits, basing this denial on their application of the doctrine of res judicata in light of this Court's prior decision in this matter, and in light of the one-year-back rule, part III, § 14 of the Workmen's Compensation Act.[2]

The Court of Appeals in an unpublished opinion, Docket No. 13991, March 30, 1973, affirmed the ruling of the Appeal Board. They felt that the present claim was barred by the doctrine of res judicata.

This Court granted leave to appeal from that decision to consider the questions raised above.

Findings of fact by the Workmen's Compensation Appeal Board are conclusive if supported by the evidence presented. *Johnson v Vibradamp Corp,* 381 Mich 388; 162 NW2d 139 (1968). This Court is bound by the factual findings of the Appeal Board in the instant case as they are adequately supported by the record before us. Therefore, as the Appeal Board noted, the sole question to be answered by this Court is what effect, if any, our *Van Dorpel* decision, *supra,* has on the rights of the parties to the instant case.

It should be pointed out at the outset, that the *Van Dorpel* rule itself has not, up to this point in

[1] *Van Dorpel v Haven-Busch Co,* 350 Mich 135; 85 NW2d 97 (1957).

[2] Currently MCLA 418.833; MSA 17.237 (833); formerly MCLA 413.14; MSA 17.188. The statute reads "[i]f payment of compensation is made (other than medical expenses) and an application for further compensation is later filed with the commission, no compensation shall be awarded by the commission for any period which is more than 1 year prior to the date of the filing of such application". This section read the same in 1945 as it does today.

time, mustered a majority on this Court. This Court, however, with the advantage of the passage of time, clearly believes Justice VOELKER's opinion more in keeping with the spirit of the Workmen's Compensation Act and the better reasoned opinion. We would lend our support to his views.

In his *Van Dorpel* opinion, Justice VOELKER held that an injured workman who had suffered various specific losses in 1948, and had been paid the statutory amount for these specific losses, but who, *because of the natural consequences which normally follow from various amputations,* was still disabled from working at the expiration of the benefits paid for these amputations, was entitled to collect further compensation under the general disability sections of the Workmen's Compensation Act.[3]

In effect, *Van Dorpel* allows benefits for that disability which our Court recognized may have been present in the *Hlady, supra,* case when it decided the issues in 1949. The facts in *Hlady* and *Van Dorpel* are almost identical. The law applied to each has varied with the passage of time. But does our law permit this Court to now reach, 29 years after Mary Hlady's accident, any different result?

There is little question that the doctrine of res judicata applies to workmen's compensation proceedings. *Besonen v Campbell,* 243 Mich 209; 220 NW 301 (1928). This Court has cited with approval the rule set forth in 58 Am Jur, Workmen's Compensation, § 508. See *White v Michigan Consolidated Gas Co,* 352 Mich 201; 89 NW2d 439 (1958). This section states:

"The general rule with respect to the effect upon the

---

[3] MCLA 421.9; MSA 17.159.

application of the principles of res judicata to decisions under workmen's compensation acts, of a provision authorizing the modification of an award upon a showing of a change in the employee's condition, is that a compensation award is an adjudication as to the condition of the injured workman at the time it is entered, *and conclusive of all matters adjudicable at that time,* but it is not an adjudication as to the claimant's future condition and does not preclude subsequent awards or subsequent modifications of the original award upon a showing that the employee's physical condition has changed. * * * " (Emphasis added.)

Mary Hlady's physical condition has not changed since her 1945 injury. The only change has been in the law applied to cases of this nature. However, it has long been the law of this state, starting with the leading case of *Jacobson v Miller,* 41 Mich 90; 1 NW 1013 (1879), that the doctrine of res judicata applies not only to facts previously litigated, but also to points of law which were necessarily adjudicated in determining and deciding the subject matter of the litigation.

In *Jones v Chambers,* 353 Mich 674; 91 NW2d 889 (1958), decided just one year after our *Van Dorpel* decision this Court made that point very clear. We stated, pp 680–681:

"Where issues of fact or law have been finally decided by a court of competent jurisdiction in one legal action which are essential to the maintenance of another legal action, it is universally held that the second action must fail.

"Michigan's leading case on the doctrine of *res judicata* is Justice COOLEY's opinion in *Jacobson v Miller,* 41 Mich 90. The second headnote gives us this pertinent summary:

" 'An adjudication is conclusive in respect to (1) the subject matter of the litigation, and (2) the point of fact or law or both necessarily settled in determining the issue on the subject matter.'

"See, also, *Viaene v Mikel,* 349 Mich 533 [84 NW2d 765 (1957)].

"The courts have, however, divided to some degree as to whether the principle involved is an application of the doctrine of *res judicata,* or a somewhat separate doctrine of collateral estoppel.

"The United States supreme court has answered this problem in legal linguistics thus:

" 'We have often held that under the doctrine of *res judicata* a judgment entered in an action conclusively settles that action as to all matters that were *or might have been litigated or adjudged therein.* But a prior judgment between the parties has been held to operate as an estoppel in a suit on a cause of action different from that forming the basis for the original suit "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." This latter aspect of *res judicata* is the doctrine of collateral estoppel by judgment, established as a procedure for carrying out the public policy of avoiding repetitious litigation.' *Partmar Corporation v Paramount Pictures Theatres Corp,* 347 US 89, 90, 91 (74 S Ct 414, 98 L ed 532 [1954])." (Emphasis added.)

See also *Moritz v Horsman,* 305 Mich 627; 9 NW2d 868; 147 ALR 117 (1943).

Plaintiff asserts that in her previous visit to this Court that she did not specifically raise a *Van Dorpel* issue and that this Court did not specifically reaffirm its prior holding in *Curtis v Hayes Wheel Co,* 211 Mich 260; 178 NW 675 (1920). Therefore, she asserts the doctrine of res judicata does not apply to the instant proceedings. However, an almost identical argument was presented to this Court in *Tessler v Rothman,* 232 Mich 62; 204 NW 694 (1925). In that case the Court stated, pp 66–68:

"The principle for which the plaintiff contends in this case is well stated in 15 R. C. L. p 972, § 449, as follows:

" 'While a judgment is decisive of the points raised by

the pleadings, or which might properly be predicated upon them, it does not embrace any matters which might have been brought into the litigation, or causes of action which the plaintiffs might have joined, but which in fact, were not joined or embraced in the pleadings.'

"Counsel also cites *Barras v Youngs,* 185 Mich 496 [152 NW 219 (1915)], and insists it is controlling.

"It may be well in this connection to quote further from 15 R. C. L., which we do as follows:

" 'On the other hand it is equally well settled that a fact which was directly tried and decided by a court of competent jurisdiction cannot be contested again between the same parties in the same or in any other court, and that where some controlling fact or question material to the determination of both actions has been determined in a former suit, and the same fact or question is again at issue between the same parties, its adjudication in the first will, if properly presented, be conclusive of the same question in the latter suit, without regard to whether the cause of action is the same or not, or whether the same suit involves the same or a different subject-matter. * * * In such cases it is also immaterial that the two actions were based on different grounds or tried on different theories or are instituted for different purposes and seek different relief.' 15 R. C. L. p 974, § 450.

" 'While this doctrine of the effect of a judgment as an estoppel in subsequent actions is limited to matters involved in the litigation, it is generally held to be equally applicable whether the point decided is of itself the ultimate vital point, or only incidental, if still necessary to the decision of that point, and a judgment in a prior suit is deemed final and conclusive in subsequent litigation between the parties, or their privies, *as to those matters necessarily determined or implied in reaching the final judgment, although no specific finding may have been made thereto, and even though it was not raised as an issue by the pleadings in the former action.* If the record of the former trial shows that the verdict could not have been rendered without deciding the particular matter, it will be considered as

having settled that matter as to all future actions between the parties.' 15 R. C. L. p 976, § 451.

"In the case of *Barker v Cleveland,* 19 Mich 230 (1869), Chief Justice COOLEY, speaking for the court, says:

" 'To make a judgment in one case a bar to another it is not necessary that the object of the two suits be the same, nor that the parties should stand in the same relative position to each other. * * * *And it is immaterial whether the point was actually litigated or not if its determination was necessarily included in the judgment.'* "(Emphasis added.)

Counsel are in disagreement whether or not the *Van Dorpel* issue was actually litigated in the former *Hlady* case. There is no doubt that plaintiff claimed general disability over and beyond the loss of her fingers. Nor is there any doubt that evidence was introduced into the record by plaintiff and defendant alike as to the extent of the disability suffered by plaintiff. It is true that plaintiff did not specifically brief and argue the *Van Dorpel* issue before this Court. She did not argue that the disability created by the loss of her four fingers itself entitled her to additional benefits. She did not request the Court to overrule *Curtis, supra.*

Yet, at the same time, plaintiff fully understood that the *Curtis-Van Dorpel* issue was crucial to her application for further benefits and that it necessarily must be either affirmed or rejected by this Court in its final judgment. In her supplemental brief filed with this Court in 1949, the plaintiff states:

"In the instant case, for example, the testimony clearly indicates that Mary Hlady is for all practical purposes unemployable and relegated to odd-lot and favored employment. She is in fact totally disabled. *Hood v Wyandotte,* 272 Mich 190 [261 NW 295 (1935)]. Were it not for the limitation contained in the Act

setting forth her right to compensation for the loss of a hand, she could probably claim compensation for the entire period of total disability which might extend up to 750 weeks."

However, plaintiff by this statement concedes the issue she now tries to raise before this Court. As we clearly pointed out in *Van Dorpel* the *limitation* she speaks of is not contained within the act itself. It lay within the confines of our old *Curtis, supra,* holding. In *Van Dorpel, supra,* p 147 we stated:

"This case involves an interpretation of a statute which is silent on the precise issue involved. This Court 37 years ago decided what it thought the correct interpretation should be. We happen to disagree with that old interpretation and wish to make a new interpretation, * * * ."

Plaintiff may not concede an issue, necessarily determinative of and included in the judgment of this Court, and then, after another has successfully raised the issue she did not wish to contest, ask the Court again for relief. The doctrine of res judicata bars this from happening. Mary Hlady could have as easily raised this issue as Peter Van Dorpel. It was, in fact, incumbent upon her to do so if she wished to avail herself of that interpretation.

Even if the doctrine of res judicata did not apply in this case, our Workmen's Compensation Act itself prevents this Court from awarding further benefits to the plaintiff. As set forth previously in this decision, the act contains a one-year-back rule provision. In effect this provision prevents the courts or the Appeal Board from awarding payment of benefits for *any period of time* prior to one year back from the filing of the petition for hear-

ing. In the instant case plaintiff filed her petition with the Department on November 16, 1967. The one-year-back rule, if applicable, would prevent this Court from awarding benefits covering any period of time prior to November 16, 1966. Yet the act itself mandates that at an absolute maximum, Mary Hlady may not be compensated for any period of time extending beyond 500 weeks from October 18, 1945. Thus no benefits may be awarded to the plaintiff for any period beyond the year 1955. See *Clements v Chrysler Corp,* 321 Mich 558; 33 NW2d 82 (1948).

It was the intent of the Legislature in enacting this built-in statute of limitations into the Workmen's Compensation Act that it apply to situations akin to the instant one. It has been 25 years since the prior decision of this Court. During that period of time plaintiff has complacently sat back while others have attacked the prior decisions of this Court, including her own, see *Mitchell v Metal Assemblies, Inc,* 379 Mich 368; 151 NW2d 818 (1967), which, until they were overruled, barred her from further compensation. First, *Curtis, supra,* had to be overruled by *Van Dorpel.* Yet, plaintiff still within the statutory limitation period did not file. We assume her reason for not doing so was the fact that from 1934 until 1966 a six-year statute of limitations was present within the Workmen's Compensation Act by virtue of this Court's decision in *Hajduk v Revere Copper & Brass, Inc,* 268 Mich 220; 255 NW 770 (1934).[4]

Plaintiff did not contest this facet of our case

---

[4] Neither counsel in this case have addressed themselves to the question of whether or not, where the accident itself, and the *entire period* of maximum statutory benefits ended years before this Court's decision in *Autio v Proksch Construction Co,* 377 Mich 517; 141 NW2d 81 (1966), overruling *Hajduk, supra,* the *Autio* decision would be applied by the Court retroactively.

law either. It was not until this Court, in *Mitchell,
supra,* overruled plaintiff's own previous case that
she decided to come forth. This situation is a far
cry from that presented the Court in *White v
Michigan Consolidated Gas Co, supra.* The one-
year-back rule provision of the Workmen's Com-
pensation Act applies to this case. Any further
claim for compensation by plaintiff is barred by
the act itself.

Also, as pointed out above, plaintiff is claiming
disability benefits for a period beginning in Octo-
ber 1947 and continuing for a period beyond that
point. In *Van Dorpel,* p 143, we stated the test to
be applied for these benefits as follows:

"In our view the sole question in all of these cases
should be: after the passage of the number of weeks
allowed for the specific loss or losses falling short of
declared total disability, can the injured workman go
back to work?"

Plaintiff claims that the record supports her
position that she has been unable to work from
1945 through 1955, the approximate length of time
for which benefits in this case are claimed. We do
not find such to be the fact.

In *Hood v Wyandotte Oil & Fat Co,* 272 Mich
190; 261 NW 295 (1935), this Court first discussed
a situation akin to that present before us. *Hood,
supra,* was again recently discussed by this Court
in *Pulley v Detroit Engineering & Machine Co,*
378 Mich 418; 145 NW2d 40 (1966).

The facts of *Pulley* are similar to those of the
instant case. In both cases the plaintiff was a
punch press operator prior to his accident. In both
cases the plaintiff suffered the amputation of all or
the major part of one of his hands. Mrs. Hlady
contends that this amputation by itself, coupled

with the fact that she has not returned to work since her original accident, establishes the fact of her total disability. Yet in *Pulley, supra,* this Court stated (pp 426–427):

"The question therefore becomes what proof did appellant introduce as to his actual earning capacity at the hearing before the referee? We agree at the outset with appellant's counsel that there is no testimony to support the conclusion of the appeal board that plaintiff would have been able to return to his punch press job despite his injury. The only testimony on the point available to us is the contrary, namely, that the operation of a punch press requires two hands. Were this point controlling, we would perforce vacate the finding of the appeal board as having no testimonial support. However, the test is not whether appellant could again operate a punch press and earn the same wages he did at the time of his injury. To so hold would read out of the statute the unequivocal and clear language:

" 'The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury.'

"What proof then did plaintiff-appellant submit of his 'actual earning capacity after the employment ceases, as affected by his physical condition, his ability to work, the market for his labor and other pertinent circumstances.' *MacDonald [v Great Lakes Steel Corp,* 274 Mich 701; 265 NW 776 (1936)], *supra.* Regrettably, there is little, if any, direct testimony on the point."

In this case, plaintiff has entered *no* proof as to her wage-earning capacity between 1945 and 1955. This Court made it very clear in *Hood, supra,* that the finding of such incapacity was a factual determination to be made by the Workmen's Compensation Department based upon the record before them. In *Pulley, supra,* we again reaffirmed this position.

In the instant case the Appeal Board has made no factual findings regarding plaintiff's wage-earn-

ing capacity for the crucial period of time. Indeed, they could not have made such a finding, other than one negative to plaintiff, for the plaintiff presented no evidence of this impaired ability to earn wages to the department. It was the plaintiff's burden to produce such evidence. *Pulley, supra.* Findings of fact in these cases must be supported by the record. It does not exist in this case.

The decision of the Court of Appeals is affirmed. Costs to appellee.

SWAINSON, WILLIAMS, and J. W. FITZGERALD, JJ., concurred with T. M. KAVANAGH, J.

M. S. COLEMAN, J., concurred in the result.

LEVIN, J. *(concurring).* Mary Hlady suffered a work-related injury in 1945 which resulted in amputation of four fingers. She received benefits for this specific loss and, upon expiration of those benefits, applied for additional benefits on the ground that the injury she suffered constituted the loss of the industrial use of a hand. This Court reversed an award of benefits. *Hlady v Wolverine Bolt Co,* 325 Mich 23; 37 NW2d 576 (1949).

Eighteen years later, in 1967, Hlady applied for general disability benefits. She appeals from a denial of her claim.

The Court rests its affirmance of the Workmen's Compensation Appeal Board on two grounds: the 1949 decision of this Court is res judicata and the 500-week[1] period of eligibility had expired before

---

[1] The statute provided that "in no case" where "the incapacity for work resulting from the injury is partial * * * shall the period covered by such compensation be greater than 500 weeks *from the date of the injury."* (Emphasis supplied.) 1948 CL 412.10; MSA 17.160.

Hlady was injured in October, 1945. Her period of eligibility for partial disability benefits expired in 1955.

Hlady's 1967 application included a claim for permanent and total

Hlady filed her 1967 claim.

I concur in the denial of benefits. The period of eligibility had expired before Hlady filed her claim. I write separately because the 1967 application is not barred by the doctrine of res judicata.

I

Whether a claim for *continuing* disability benefits is barred by an earlier adverse decision is of considerable importance in light of the 1965 amendment to the act eliminating the 500 and 750/800 week[2] limitations. As to injuries the date "of which occurs" on or after September 1, 1965, the act now provides that compensation "shall be paid for the duration of the disability".[3]

When Hlady filed her original claim, a decision of this Court precluded her recovery of general disability benefits.[4] She contends that when this Court denied her benefits in 1949, it did not consider the issue of general disability; that issue, not having been litigated, is not res judicata.

The general rule is that all issues which were or could have been raised in an action are barred under the doctrine of res judicata.[5] The policy of

disability benefits. The statute provided that such benefits "shall be paid for 750 weeks *from the date of the injury.*" (Emphasis supplied.) 1948 CL 412.9; MSA 17.159. Hlady's period of eligibility for permanent and total disability benefits expired in 1960, seven years before her 1967 application was filed.

[2] 1948 CL 412.9 was amended by 1954 PA 175. The period of eligibility for permanent and total disability benefits was extended from 750 to 800 weeks from the date of injury.

[3] 1948 CL 412.9, 412.10, as amended by 1965 PA 44; MSA 17.159, 17.160; now MCLA 418.351, 418.361; MSA 17.237(351), 17.237(361).

[4] *Curtis v Hayes Wheel Co,* 211 Mich 260; 178 NW 675 (1920).

[5] *See Harrington v Huff & Mitchell Co,* 155 Mich 139, 141–142; 118 NW 924 (1908).

*Similarly, see La Vasser v Chesbrough Lumber Co,* 190 Mich 403; 157 NW 74 (1916); *McDannel v Black,* 270 Mich 305, 311; 259 NW 40 (1935).

the law is to require that the parties raise and join all matters which can be litigated in one action and that there be an end to litigation.[6]

Eight years after this Court's 1949 decision in *Hlady,* the rule of law which had prevented Mary Hlady from recovering general disability benefits was changed. See *Van Dorpel v Haven-Busch Co,* 350 Mich 135; 85 NW2d 97 (1957).[7] By then Hlady's 500 week (partial disability) period of eligibility had expired. The 750 week (total and permanent disability) period did not expire until 1960. Her claim for general disability benefits was filed seven years later.

Were it not for the 500 and 750 week limitations, I would hold that Hlady's claim is not barred. The doctrine of res judicata does not preclude consideration of her 1967 application for continuing disability benefits.

We all agree that if there had been a change of fact, the doctrine of res judicata would not bar consideration of Hlady's claim. Thus, if she had been awarded general disability benefits and her physical condition improved, benefits could be terminated; and if there was a subsequent deterioration of her physical condition, benefits could be renewed. Similarly, even though she was not initially awarded disability benefits, if her physical condition had deteriorated *and* if the period of

[6] "Public policy, judicial orderliness, economy of judicial time, and the interest of the litigants, as well as the peace and order of society, all require that stability should be accorded judgments, that controversies once decided on their merits shall remain in repose, that inconsistent judicial decisions shall not be made on the same set of facts, and that there be an end to litigation which, without the doctrine of res judicata, would be endless." 46 Am Jur 2d, Judgments, § 395, pp 559–561.

[7] *Van Dorpel* was a 4–4 decision. We are advised, however, that Justice Voelker's opinion has nevertheless been regarded and followed by the Workmen's Compensation Appeal Board and the profession as overruling *Curtis* and other inconsistent precedent.

eligibility had not expired, general disability benefits could now be awarded.

My colleagues say that the "only change has been in the law applied to cases of this nature". The basis of our disagreement is that, in my opinion, a change of law, like a change of fact, eliminates the bar of res judicata where the claimant seeks continuing benefits under a statute providing "income maintenance".

The law can be changed by legislative enactment or court decision. When the Legislature amends a statute, its applicability to a case previously adjudicated is not analyzed in terms of res judicata. The issue then is one of statutory construction: did the Legislature intend the amendment to have retroactive as well as prospective application?[8] Where the change is effected by court decision the analysis should be the same, whether as a matter of policy the new rule of law should apply retroactively as well as prospectively.[9]

There is no need to invoke the doctrine of res judicata to prevent reopening of decided cases; if it is thought that the new rule should not apply to claims arising before its pronouncement, that limitation can be stated. If the new rule is to apply only prospectively then, in general, the old rule

[8] *Wagner v Baron,* 64 So 2d 267, 268; 37 ALR2d 831, 833 (Fla, 1953).

"In the absence of an express intent to make the amendment prospective only, courts must look to the facts and circumstances surrounding the adoption of the amendment to determine whether or not the legislature intended it to be retroactive." *Lahti v Fosterling,* 357 Mich 578, 589; 99 NW2d 490 (1959). *See, also, Cichecki v Hamtramck,* 382 Mich 428; 170 NW2d 58 (1969).

An adjudication denying relief on grounds subsequently removed by a curative act has been held not to bar a new action on the validated claim. *See Utter v Franklin,* 172 US 416; 19 S Ct 183; 43 L Ed 498 (1899); *McGillis v McGillis,* 154 NY 532; 49 NE 145 (1898); *Mackenzie v Douglas County,* 91 Or 375; 178 P 350 (1919).

[9] *See Whetro v Awkerman,* 383 Mich 235; 174 NW2d 783 (1970); *Daley v LaCroix,* 384 Mich 4; 179 NW2d 390 (1970), and the cases cited therein at p 14.

should be applied to pre-new-rule cases where
there has been no final adjudication[10] as well as
those where adjudication has become "final".

## II

Res judicata is not an absolute doctrine. Courts
and commentators have recognized that in appro-
priate circumstances res judicata "may give way
when in irreconcilable conflict with other, more
important public policies".[11]

[10] Including those perchance where benefits are being paid voluntar-
ily.

[11] *Bates v Devers,* 214 Va 667, 670; 202 SE2d 917, 920, fn 2 (1974).

Courts have not applied res judicata where its application would
result in uneven application of the law or frustrate public policy:
*Spilker v Hankin,* 88 US App DC 206; 188 F2d 35 (1951) (inviolability
of the fiduciary nature of the attorney-client relationship is more
important than consistent application of res judicata);

*Denver Building & Construction Trades Council v National Labor
Relations Board,* 87 US App DC 293, 299; 186 F2d 326, 332 (1950),
*rev'd on other grounds,* 341 US 675; 71 S Ct 943; 95 L Ed 1284 (1951)
(application of res judicata would "submerge the plan of Congress for
the administration and enforcement of its policy").

*United States v General Electric Co,* 358 F Supp 731, 741–742 (SD
NY, 1973) ("If the Government is barred from enforcing the [anti-
trust] law as it now is against G. E. alone, G. E. would be given an
unfair and undeserved advantage over its competitors. It would enjoy
what would be tantamount to perpetual immunity in an area in
which the public interest should be paramount and the consuming
public would suffer in consequence").

*Bishop v Fall River,* 346 Mass 342, 345; 191 NE2d 769, 770 (1963)
(application of res judicata "would result in the employees who were
parties to the prior litigation receiving higher compensation than
their fellow workers who were similarly situated").

*Christian v Jemison,* 303 F2d 52, 55 (CA 5, 1962) (the Court
permitted after "an intervening decision or change in the law cre-
at[ed] an altered situation" a second attack on the constitutionality of
a segregation statute).

*See also Adams v Pearson,* 411 Ill 431, 440; 104 NE2d 267, 272
(1952).

"Preclusion is a doctrine being applied in actual cases, and the
application will reflect to some extent at least, the nature of the
controversy involved." Vestal, *Res Judicata/Preclusion,* Issue Preclu-
sion, Adjudicating Bodies, p V-268.

*See* Annos: *Bastardy—Res Judicata,* 37 ALR2d 836; *Applicability of
Doctrine of Administrative Res Judicata to Determination by Secre-*

Recently, this Court concluded that its decision in *Young v Leadbetter,* No. 52, 523 (July 2, 1969), holding that Coleman Young was ineligible to run for mayor in 1969, was not res judicata of his eligibility to seek election to the same office in 1973. "Where questions of law are involved, the courts have been reluctant to apply the rule of res judicata." *Young v Detroit City Clerk,* 389 Mich 333, 338; 207 NW2d 126 (1973).

The Restatement of Judgments, 2d, § 68.1, Tentative Draft No. 1, 1973, cited in *Young,* states that res judicata is not a bar where,

"[a]lthough an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to judgment * * * [t]he issue is one of law and * * * [a] new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws * * * ."

Judicial decisions at times change the construction of the Internal Revenue Code. The United States Supreme Court has held that a judicial decision affecting a particular taxpayer does not preclude either the taxpayer or the government from relying on a later decision changing the construction of the code upon examination of a return for a subsequent period:

tary of *Health, Education, & Welfare that Claimant Is Not Entitled to Social Security Disability Benefits,* 14 ALRF 776.

"It would seem desirable to treat contrary intervening decisions as a change in one of the controlling circumstances in all instances, and not apply collateral estoppel in the second action." *Developments in the Law—Res Judicata,* 65 Harv L Rev 818, 845 (1952).

*See, generally,* Polasky, *Collateral Estoppel—Effects of Prior Litigation,* 39 Iowa L Rev 217, 221, 250 (1954); Groner & Sternstein, *Res Judicata in Federal Administrative Law,* 39 Iowa L Rev 300, 303–304 (1954); Comment Note, *Res Judicata as Subject to Exception when its Application would be Opposed to Public Policy,* 88 L Ed 389 (1948).

"A taxpayer may secure a judicial determination of a particular tax matter, a matter which may recur without substantial variation for some years thereafter. But a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete and erroneous, at least for *future purposes.* If such a determination is then perpetuated each succeeding year as to the taxpayer involved in the original litigation, he is accorded a tax treatment different from that given to other taxpayers of the same class. As a result, there are inequalities in the administration of the revenue laws, discriminatory distinctions in tax liability, and a fertile basis for litigious confusion. Compare *United States v Stone & Downer Co,* 274 US 225, 235–236 [47 S Ct 616; 71 L Ed 1013 (1927)]. Such consequences, however, are neither necessitated nor justified by the principle of collateral estoppel. That principle is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally. It is not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities among taxpayers." *Commissioner of Internal Revenue v Sunnen,* 333 US 591, 599; 68 S Ct 715; 92 L Ed 898 (1948). (Emphasis added.)

The income tax analogy is not perfect. But here as there the question of liability/entitlement is subject to reexamination in subsequent periods.

### III

The Workmen's Compensation Act is remedial legislation which this Court has liberally construed to effectuate its purposes.[12]

Workmen's compensation benefits are of two

___

[12] *See* Justice Voelker's opinion in *Van Dorpel v Haven-Busch Co,* 350 Mich 135; 85 NW2d 97 (1957); *Lahti v Fosterling, supra. See, also,* Justice Talbot Smith's opinion in *Sheppard v Michigan National Bank,* 348 Mich 577; 83 NW2d 614 (1957).

kinds: those which, while paid over a period of time, are awarded for a specific loss [a "closed" transaction] and those which are awarded for continuing disability [an "open" transaction]. Workmen's compensation disability benefits, like social security and unemployment compensation benefits, are a form of income maintenance for persons whose wage-earning capacity has been suspended or terminated. A claimant's entitlement to such benefits depends on the circumstances at the time of application and payment.

A change in law, statutory or judge-made, like a change in fact, can effect a change in circumstances justifying, upon application of worker[13] or employer, an award of benefits or termination or suspension of benefits previously awarded.

The right to workmen's compensation disability benefits depends on whether, at a given point in time, the claimant is within the statutory intendment. The scope of that intendment is subject to change. A determination that a claimant is not today entitled to disability benefits does not preclude reexamination of his entitlement should the facts or the law, by legislative amendment or court decision, change tomorrow. Entitlement to continuing disability benefits is an open question.

T. G. KAVANAGH, C. J., concurred with LEVIN, J.

Williams, J. *(concurring).* On the facts and record before the Court in this case, Justice T. M.

---

[13] "The first application was filed on April 26, 1956. Since the plaintiff did not seek judicial review, the decision of the hearing examiner is conclusive on the issue of his disability between January 26, 1954 and April 25, 1956. However, the claimant met the special earnings requirement of the Social Security Act until September 30, 1957 so that if he qualified under the disability provisions of the statute between April 25, 1956 and September 30, 1957, the problem of res judicata may be avoided." *Moore v Celebrezze,* 252 F Supp 593 (ED Pa, 1966).

Kavanagh has correctly and convincingly reached the proper result.

The only purpose of this concurrence is to make abundantly clear what the Justice strongly intimates in his opinion, namely, that in analogous cases which present a proper evidentiary record of impaired ability to earn wages and in which there are no procedural bars to recovery, claimants have a substantive right to compensation pursuant to Justice Voelker's opinion in *Van Dorpel*.[1]

---

[1] *Van Dorpel v Haven-Busch Co,* 350 Mich 135; 85 NW2d 97 (1957). —Reporter.