WOOD v FABRICATORS, INC

Docket No. 118579. Submitted January 16, 1991, at Lansing. Decided May 20, 1991, at 10:00 A.M. Leave to appeal sought.

Ruth Wood was awarded workers' compensation benefits as a result of job-related injuries suffered in 1967. In 1981, she sought benefits for total and permanent disability, naming the Second Injury Fund as a party for the first time. In 1989, the Workers' Compensation Appeal Board found her to have been totally and permanently disabled on August 20, 1970, because of the industrial loss of use of both legs resulting from the 1967 accident, and ordered the Second Injury Fund to pay benefits beginning with August 20, 1970, including ten percent interest on all accrued and unpaid benefits. The Second Injury Fund appealed, alleging that it was denied due process because the WCAB relied on evidence presented ten years before it was involved in the case, that the doctrine of res judicata bars the plaintiff's claim for total and permanent disability, and that there was insufficient evidence that the plaintiff was totally and permanently disabled.

The Court of Appeals held:

1. The Second Injury Fund was not denied due process. The evidence of which the Second Injury Fund complains it had no notice was contained in the record and was properly considered by the WCAB in its review of the decision of the hearing referee de novo. The Second Injury Fund could have requested that additional testimony be taken, but it did not. In fact, the Second Injury Fund cross-examined the plaintiff on the basis of some of the earlier testimony, and did not object when the referee stated that he would consider evidence presented before the Second Injury Fund's appearance in the case.

2. The plaintiff's claim for total and permanent disability is not barred by the doctrine of res judicata. The fact that the WCAB found the plaintiff to be totally and permanently disabled on August 20, 1970, is not determinative of whether the plain-

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 581, 591, 609, 611, 659-661.

See the Index to Annotations under Workers' Compensation.

tiff knew or should have known of her total and permanent disability at that time. Only through hindsight is it clear that she was totally and permanently disabled in 1970.

3. There was sufficient evidence on the record for the WCAB to find the plaintiff totally and permanently disabled.

Affirmed.

1. WORKERS' COMPENSATION — SECOND INJURY FUND — DUE PROCESS.

The statute and rules governing an application for benefits under the Workers' Disability Compensation Act do not require that the Second Injury Fund be joined as a party, but only that the name of the employer and the general nature of the potential claim be stated; the jurisdiction of the hearing referee vests simultaneously over the employer and the Second Injury Fund, the fund's liability being derivative and parallel; thus notice to the fund is not necessary for purposes of due process (MCL 418.847; MSA 17.237[847]).

2. WORKERS' COMPENSATION — CHANGES IN PHYSICAL CONDITION — MODIFICATION OF AWARD.

Generally, a workers' compensation award is an adjudication of the condition of an injured worker at the time the award is entered and is conclusive of all matters adjudicable at that time, but it is not an adjudication of the worker's future condition and does not preclude subsequent awards or modifications upon a showing that the employee's physical condition has changed.

*Robison & Sims, P.C.* (by *John M. Sims*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Rose A. Houk,* Assistant Attorney General, for the Second Injury Fund.

Before: NEFF, P.J., and SHEPHERD and McDONALD, JJ.

NEFF, P.J. The Second Injury Fund (hereafter defendant) appeals by leave granted from an order of the Workers' Compensation Appeal Board which found plaintiff totally and permanently disabled as of August 20, 1970. Both the WCAB and

the hearing referee found plaintiff totally and permanently disabled because of the industrial loss of use of both legs resulting from an injury on January 31, 1967. In its order, the WCAB modified the hearing referee's decision which found plaintiff totally and permanently disabled as of May 2, 1978. Defendant was ordered to pay benefits based on a starting date of August 20, 1970, along with ten percent interest on all accrued and unpaid benefits. We affirm.

I

On January 31, 1967, plaintiff was injured when she fell off a conveyor belt at work and struck her back on a table. James Mauer, M.D., testified by deposition on March 20, 1969, that he diagnosed her condition as a bulging intervertebral disk at L4-5, on which he performed surgery in August 1967. In March 1968, he did a repeat myelogram because plaintiff was not progressing as quickly as expected. He found a small defect, but no definite evidence of a disk problem. He characterized plaintiff as being a fragile and very tense, chronically ill, woman.

On December 31, 1968, Dr. Mauer gave plaintiff permission to go back to work with restrictions on lifting and bending. Plaintiff had previously tried to return to work, but was unable to do so. She was offered a sitting job with minimal lifting to be done at her own pace. Plaintiff returned to work on January 13, 1969, and worked about 4½ hours before going home to bed for two days. She did not return to work after that date.

Initially, voluntary payments were made to plaintiff by the employer. After their termination, an administrative hearing was held on April 4, 1969. At that hearing, plaintiff described her con-

dition as not much better than before the operation and stated that she had constant pain and numb legs. She favored her left side both when she pulled herself out of a chair and when she walked. She reported being unable to sit or stand for longer than fifteen or twenty minutes at a time. The hearing officer recommended a closed award because of plaintiff's refusal to accept an offer of favored work. On appeal, the WCAB modified the hearing officer's report to require an open award to plaintiff until further order by the department.

In February 1970, plaintiff filed a petition for medical expenses only because of a dispute regarding the reasonableness of weekly treatments by Dr. Vearrindy, a chiropractor. Dr. Vearrindy's deposition was taken on August 20, 1970, and he reported that there had been a minor degree of improvement since 1969, when he first began treating plaintiff, but by August 20, 1970, her condition had reached a static point of no improvement. Although the treatment seemed to relieve plaintiff's discomfort, Dr. Vearrindy continued to agree with his previous observation at an April 3, 1969, deposition that it was impossible for plaintiff to perform any type of work at that time, and the treatments were necessary for plaintiff's well-being.

In an August 20, 1970, deposition, Dr. Mauer stated that he felt that plaintiff had a "strong functional overlay" or emotional factor and felt that someone skilled in working with psychosomatic problems might be able to help her.

At the December 15, 1970, hearing, plaintiff reported that, if anything, she was worse than in April 1969. In an order mailed February 3, 1971, the hearing referee found that medical and travel expenses incurred by plaintiff in receiving treatment by Dr. Vearrindy were reasonable and or-

dered payment of those expenses. The WCAB affirmed the decision in an order entered on May 5, 1972.

In March 1976, the employer and its insurance carrier filed a petition objecting to plaintiff's choice of Dr. Vearrindy as a treating physician, alleging that his medical treatment was of no benefit to plaintiff.

On December 15, 1976, Dr. Charles Overbey, a psychiatrist, evaluated plaintiff at the request of the employer and its insurance company. He found essentially the same situation as existed at the time of injury, and stated that plaintiff probably had an organic cause for her pain and continues to have chronic pain. She showed anxiousness, depression, and some hypochondria, which are characteristic of chronic pain patients, whether the pain is of an organic or psychological origin. He doubted that there is much to offer plaintiff that would do anything more than alleviate her symptoms on a day-to-day basis.

The March 1976 petition was later withdrawn.

On May 17, 1978, the employer and insurance company again filed a petition objecting to plaintiff's treatment by Dr. Vearrindy, alleging that it was of no medical benefit to plaintiff. The petition was supported by a written report from Paul Kingsley, M.D., an orthopedic surgeon, who examined plaintiff on May 2, 1978. Dr. Kingsley found a deep-seated psychogenic problem which is extremely difficult to correct, except through psychiatric treatment. Dr. Kingsley also testified at a June 8, 1978, deposition that if plaintiff had been receiving ultrasound, diathermy, exercise, and physical therapy over a number of years and was still complaining of the same thing, then she obviously was not getting any benefit from the treatment.

At a March 28, 1979, deposition, Dr. Kingsley testified that his May 2, 1978, examination of plaintiff found no evidence of neurogenic involvement and found no indication that she should be having problems walking. He also opined that the usefulness of the heat therapy, vibratory massage, and manual manipulation plaintiff was receiving had been exhausted and that plaintiff could not derive any further benefit from such treatment. He also stated that that treatment should not affect her ability to walk. He did state that the treatment may provide a general feeling of some improvement, but there was no permanent effects from the therapy. He did not believe that the treatments affected plaintiff's physical condition in any significant manner.

At an April 4, 1979, deposition, Dr. Vearrindy testified that he was treating plaintiff once a week and that treatments were necessary for her to remain ambulatory. Dr. Vearrindy provided heat therapy, vibratory therapy, and manual manipulation.

The employer's petition to stop paying for treatments by Dr. Vearrindy was denied in a decision mailed on August 30, 1979.

On February 21, 1981, plaintiff filed a petition for total and permanent disability, naming defendant Second Injury Fund for the first time.

Dr. Kingsley was again deposed, and defendant was present, but asked no questions. Dr. Kingsley had reexamined plaintiff on June 4, 1980, and found that plaintiff's condition had deteriorated since he had seen her in May 1978. According to Dr. Kingsley, plaintiff exhibited objective findings which would indicate nerve root irritation, and he declared her totally disabled from carrying out any type of employment at that time.

A hearing was held on May 6, 1981, at which counsel for defendant was present. At that hearing, plaintiff stated that her condition had been getting progressively worse.

At the close of the hearing, the referee established that there was no objection to him reviewing past documents:

> *Mr. Wilcox [plaintiff's counsel]:* I suppose the Court is going to take knowledge of all the depositions in the file from Day One?
>
> *The Court:* Well, I'll have to because I'm not familiar, frankly, with this file. So I will take it upon myself to review these various depositions in order to get . . .
>
> *Mr. Wilcox:* There is a Board opinion in it, too.
>
> *The Court:* All right. I will be happy to do that. I won't be happy to do it, but I will do it.
>
> *Mr. Wilcox:* I know you will do it.

The referee then asked both defense counsel whether they had anything further. Both said that they did not.

In a decision mailed May 28, 1981, the hearing referee found plaintiff totally and permanently disabled as a result of the industrial loss of use of both lower extremities on or about May 2, 1978. The referee relied on the June 8, 1978, testimony of Dr. Kingsley.

Defendant applied for a review of the referee's decision, claiming he found disability outside the period permitted by MCL 418.361(3)(g); MSA 17.237(361)(3)(g) and that plaintiff was not totally and permanently disabled. Defendant also briefly argued the issue of res judicata.

The WCAB modified the referee's decision on June 1, 1989, by finding plaintiff totally and permanently disabled as of August 20, 1970. The board reviewed all evidence in the file, dating back

to depositions taken in connection with plaintiff's 1968 petition. The board noted plaintiff's testimony from May 6, 1981, stating that her condition had remained largely the same since 1969, although there had been some deterioration in the previous three years. The board also noted Dr. Vearrindy's April 3, 1969, and August 20, 1970, testimony that plaintiff was totally disabled and had no chance for further improvement. The board also used the December 15, 1976, report of Dr. Overbey, who found psychological problems caused by plaintiff's chronic pain and who did not feel that there was anything that could be done for plaintiff other than to alleviate her symptoms on a day-to-day basis.

The board stated that the fact that plaintiff's condition had worsened from 1978 to 1981 did not indicate that plaintiff was not totally and permanently disabled before Dr. Kingsley's 1978 and 1981 evaluations. The board gave no weight to Dr. Mauer's testimony that there was no identifiable medical cause for plaintiff's complaints, but found Dr. Vearrindy to be a credible witness.

Defendant appeals this decision.

## II

Defendant first contends that it was deprived of due process by the WCAB's principal reliance upon evidence presented ten years before defendant was involved in this case. We disagree.

In finding defendant liable for total and permanent disability benefits, the WCAB relied principally upon the August 20, 1970, testimony of Dr. Vearrindy. The WCAB also relied upon other medical testimony taken in 1968 and 1969, including Dr. Vearrindy's deposition taken on April 3, 1969. Finally, the WCAB relied upon plaintiff's testimony

taken in 1981. With the exception of plaintiff's testimony, all of the evidence the WCAB relied upon to establish August 20, 1970, as the date of permanent and total disability was taken and introduced about ten years before defendant Second Injury Fund had any contact with this case. We cannot agree with defendant, however, that this denied it due process.

In *Bordas v Detroit General Hosp,* 100 Mich App 31, 34; 298 NW2d 655 (1980), this Court stated:

> Under MCL 418.847; MSA 17.237(847), the injured employee is required to file an application stating ". . . the general nature of any claim as to which any dispute or controversy may have arisen . . . ." Plaintiff is required only to state the employer, along with the general nature of a potential claim. The jurisdiction of the hearing referee then vests simultaneously over the case against the employer and against the Second Injury Fund. The fund's liability is derivative from that of the employer. *White v [Weinberger] Builders, Inc,* 397 Mich 23, 30; 242 NW2d 427 (1976). If liability is derivative, then it may also be said to be parallel, thus precluding a due process and notice argument by defendant [Second Injury Fund]. The statute and rules governing the application for benefits do not require that the employee list the Second Injury Fund as a defendant. Moreover, the statute provides for reimbursement to the employer by the Second Injury Fund where total and permanent disability differential benefits have been paid.

It is well established that the WCAB reviews decisions of the hearing referees de novo. *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 135; 274 NW2d 411 (1979); *Aaron v Michigan Boiler & Engineering,* 185 Mich App 687, 693; 462 NW2d 821 (1990). The WCAB also has the discretion to take additional evidence. MCL 418.859; MSA 17.237(859); *Aaron, supra,* p 694.

Here, the evidence which defendant complains that it did not have notice of was contained in the record and was properly considered by the WCAB in its de novo review of the decision of the hearing referee. Defendant could have requested that it be allowed the opportunity to take additional testimony from Dr. Vearrindy or any of the other individuals on whose testimony the WCAB relied, but it did not. Moreover, because defendant knew that Dr. Kingsley's deposition testimony, taken before defendant was made a party, would be used, and, in fact, cross-examined plaintiff on the basis of that testimony, we cannot see how it could argue that it was denied due process because the WCAB relied on evidence presented before it was made a party.

Finally, as noted previously, at the May 6, 1981, hearing, the referee stated that he was going to take knowledge of all the depositions in the file from the very beginning of the case. Defendant did not object then to the referee considering the evidence presented before its appearance in the case and should not now be heard to complain that this amounted to a denial of due process.

### III

Defendant also contends that the WCAB's 1970 disability date itself bars plaintiff's claim for total and permanent disability. According to defendant, if plaintiff was totally and permanently disabled as early as 1970, then plaintiff should have raised the issue in the hearing on her petition at that time. Defendant argues that, because she could have raised the claim but did not do so, she is barred by the doctrine of res judicata from raising the issue in a later petition.

The concerns behind the principle of res judi-

cata, the economy of judicial resources and the finality of litigation, apply to workers' compensation proceedings. *Gose v Monroe Auto Equipment Co,* 409 Mich 147, 159; 294 NW2d 165 (1980). In noting that its opinions and those of this Court have endorsed both a narrow and broad application of the res judicata role, our Supreme Court stated:

> Our workers' compensation cases also contain conflicting language. Once again, we endorsed the broad rule in our most recent pronouncement:
> "This Court has cited with approval the rule set forth in 58 Am Jur, Workmen's Compensation, § 508. See *White v Michigan Consolidated Gas Co,* 352 Mich 201; 89 NW2d 439 (1958). This section states:
> " 'The general rule with respect to the effect upon the application of the principles of res judicata to decisions under workmen's compensation acts, of a provision authorizing the modification of an award upon a showing of a change in the employee's condition, is that a compensation award is an adjudication as to the condition of the injured workman at the time it is entered, *and conclusive of all matters adjudicable at that time,* but it is not an adjudication as to the claimant's future condition and does not preclude subsequent awards or subsequent modifications of the original award upon a showing that the employee's physical condition has changed. . . .' " [*Id.,* pp 160-161, quoting *Hlady v Wolverine Bolt Co,* 393 Mich 368, 375-376; 224 NW2d 856 (1975) (emphasis supplied in *Hlady*).]

Broad application of the principle of res judicata bars not only those claims actually raised in an earlier action, but also those claims arising out of the same transaction which the plaintiff could have brought, but did not. *Id.,* p 160; *Thompson v*

*Ford Motor Co,* 139 Mich App 177, 181; 362 NW2d 240 (1984).

In a broad sense, the question of total and permanent disability is adjudicable in every case where the claimant files a claim for general disability benefits. *Id.,* p 182. However, to apply res judicata in the manner urged by defendant on appeal would lead to anomalous results and a waste of judicial resources because claimants would be forced to file a total and permanent disability claim at the outset, even though the claim may be premature or without merit. *Id.*

This Court also stated in *Thompson:*

> [I]t is frequently not possible to establish the totality or permanency of a disability until passage of a certain amount of time. One might conclude at a later date that the claimant was totally and permanently disabled, but only with the aid of hindsight.
>
> A compensation award represents an adjudication as to the claimant's condition at the time the award is entered. *Gose, supra,* pp 161-162; *Theodore v Packing Materials, Inc,* 396 Mich 152, 158; 240 NW2d 255 (1976). In many cases, the future development of that condition is an open question when the claimant initially seeks benefits. The "primary goal" of worker's compensation legislation is "delivery of sustaining benefits to a disabled employee as soon as possible after an injury occurs." *McAvoy v H B Sherman Co,* 401 Mich 419, 437; 258 NW2d 414 (1977). Wholesale application of res judicata would bar the employee from later raising a total and permanent disability claim, even though the claim might have acquired merit through passage of time. This would turn the policy of prompt payment of benefits, noted in *McAvoy, supra,* against the intended beneficiaries of that policy. We do not feel that this result was that intended either by the Supreme Court in *Gose, supra,* or by the Legislature. [*Id.,* pp 182-183.]

This Court went on to state that a sounder approach can be found in cases holding that an unlitigated claim is barred if the party asserting it, exercising reasonable diligence, could have raised it in an earlier adjudication. *Id.,* p 183. If a claimant knew or reasonably should have known that total and permanent disability existed, the claim cannot be raised in a subsequent petition. *Id.* The Court further stated:

> Even if plaintiff had reason to know he was totally and permanently disabled at the time of the original hearing, he should not be barred from raising the claim later if his condition is changed for the worse or the outlook for improvement has grown dimmer in the interim. Such matters were not "adjudicable" at the time of the first hearing. [*Id.,* p 184, citing *Hlady, supra.*]

Applying the reasoning in *Thompson* to this case, we find that plaintiff's claim for total and permanent disability is not barred by the doctrine of res judicata. The fact that the wcab found plaintiff to be totally and permanently disabled as of August 20, 1970, is not determinative of whether plaintiff knew or should have known of her total and permanent disability at that time. Only through hindsight is it clear that plaintiff was totally and permanently disabled in 1970.

IV

Defendant's final claim is that the wcab erred as a matter of law in finding that plaintiff was totally and permanently disabled, because the record did not establish by a preponderance of the evidence that plaintiff was permanently disabled. We disagree.

Findings of fact of the wcab are conclusive

absent fraud. *Thomas v Chrysler Corp,* 164 Mich App 549, 554; 418 NW2d 96 (1987). Such findings will not be overturned if this Court finds any competent evidence to support them. *Id.*

There was sufficient evidence on the record for the WCAB to find plaintiff totally and permanently disabled. Accordingly, we must defer to the WCAB's findings.

Affirmed.